[No. 14074.   In Bank.— February 25, 1891.]

## D. S. DONAHUE, RESPONDENT, *v.* FRITZ MEISTER, APPELLANT.

QUIETING TITLE— DEFENSE— EJECTMENT— JURY TRIAL. — In an action to determine an adverse claim to real estate under section 738 of the Code of Civil Procedure, where the pleadings show that the plaintiff is in possession, and the answer sets up as a defense a cause of action in ejectment, averring that defendant was rightfully in possession and was ousted by the plaintiff before the commencement of the action, and that the plaintiff wrongfully withholds the possession from the defendant, the defendant is entitled to a jury trial upon those issues.

ID. — EQUITABLE ACTION— JURY TRIAL OF LEGAL ISSUE— INVERSION OF PARTIES. — The right to a jury trial of legal issues cannot be avoided by calling an action equitable; nor can the plaintiff, by bringing an equitable action, deprive the defendant of a jury trial, to which he would have been entitled if the parties had been inverted, and the defendant had sued the plaintiff.

MINING CLAIMS— LOCATION— CUSTOM OF MINERS— POSTING NOTICE— PROTECTION FROM WEATHER. — An original notice of location of a mining claim, written on one side of a sheet of paper, which was folded, with the writing inside, and placed upon the lode line, in a mound of rocks three feet high, under two flat rocks, so that about three fourths of an inch of the margin of the paper was exposed to view, and so placed, not for the purpose of concealing it, but in good faith, to protect it from the weather, is sufficiently posted to comply substantially with a custom of miners that "the notice should be posted in a conspicuous place upon

the claim located, at or near the lode line of said claim," it appearing that other devices were resorted to by miners to protect the notices from the weather, such as covering it with glass, or folding it in a box and placing the box in a conspicuous place.

ID. — OBJECT OF NOTICE — TEMPORARY PROTECTION — MARKING OF BOUNDARIES. — The chief value of the notice of location of a mining claim is as temporary protection of the claimant while the other acts of location are being performed, including the marking of the boundaries of the location distinctly on the ground so that they can be readily traced, which is the main essential act of location.

ID. — MINING CUSTOMS — SUBSTANTIAL COMPLIANCE — GOOD FAITH — TEMPORARY OBJECT — CONSTRUCTION. — A substantial compliance with mining customs, where good faith is shown, is sufficient, and such customs as are designed to afford a temporary protection to the claimant in the location of the claims should receive a liberal construction, when invoked years after all other acts of location have been done.

APPEAL from a judgment of the Superior Court of Nevada County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*T. S. Ford*, for Appellant.

Defendant was entitled to a jury trial upon the facts constituting his affirmative defense, which was substantially a cross-complaint in ejectment. The facts set up determine its character. (*Holmes* v. *Richet*, 56 Cal. 311; 38 Am. Rep. 54.) Where a legal title is involved in an action under section 738 of the Code of Civil Procedure, the defendant is entitled to a jury trial. (*Hyde* v. *Redding*, 74 Cal. 497; *People* v. *Center*, 66 Cal. 556.) The right of jury trial is assured by law in an action of ejectment. (Code Civ. Proc., sec. 631.) The notice of location is for the exclusive benefit of subsequent prospectors, and should be protected from the weather. The custom should receive a liberal construction. Customs must be reasonable. (1 Wendell's Blackstone, 76.) No penalty is prescribed, and there can be no forfeiture unless the rule so provides. (*McGarrity* v. *Byington*, 12 Cal. 426; *Bell* v. *Bed Rock Co.*, 36 Cal. 219; *Johnson* v. *McLaughlin*, 3 West Coast Rep. 178.

*John Caldwell,* for Respondent.

In an equity case, it is optional for the court to submit issues of fact to a jury. The defendant demanded a trial of the entire action by a jury, to which he was not entitled. (*Curtis* v. *Sutter,* 15 Cal. 262.) The right to the possession of a mining claim comes only from a valid location, and the local customs of miners must control. (Code Civ. Proc., sec. 748; Act of Congress of May 10, 1872, sec. 5.)

McFARLAND, J. — This is, in form, an action under section 738 of the Code of Civil Procedure to quiet title to a certain quartz-mining claim and land called by plaintiff the "Uncle Sam" claim. The complaint is in the usual form, and contains an averment that plaintiff is in possession of the premises in contest. In the answer, all the averments of the complaint are denied, except that of possession. It is further averred in the answer that the south half of said Uncle Sam claimed by plaintiff is identical with the north half of a quartz-mining claim called the "Waldeck," belonging to defendant; that defendant is entitled to the possession of said south half of said Uncle Sam, and "was lawfully possessed thereof" for several years next preceding April 6, 1889; that on said April 6th "the plaintiff wrongfully and unlawfully entered thereon" and ousted defendant therefrom, and that plaintiff wrongfully withholds the same from defendant. In the prayer of the answer, the defendant asked, in addition to general relief, that he "be restored to the possession of that part of the Waldeck ledge described as being in controversy." At the proper time defendant demanded a jury " on the issue raised by his said averments of prior possession and ouster "; the plaintiff opposed the demand, because the case was a proceeding in equity; and on that ground the court refused a jury. The court then proceeded to try the case; and after making certain findings, rendered judgment against

defendant, from which he appeals. And the first point made by appellant is, that the court erred in denying his demand for a jury. We think that in this contention appellant is right.

It is quite clear that the legislature, by the mere device of adding new cases to those of a class to which former equitable remedies were applicable, cannot encroach upon that provision of the state constitution which says that "the right to trial by jury shall be secured to all, and *remain* inviolate." And section 738 of the code must not be construed as intending to violate that provision of the constitution, unless such construction be unavoidable. Issues about titles to land, such as those presented by the answer in the case at bar, were triable at law at the time the constitution was adopted, and therefore either party has the right to have such issues tried by a jury. (*Taber* v. *Cook*, 15 Mich. 322.) And section 738 need not be construed as attempting to take away that right. The main effect of said section is to give parties the right to compel others, by suit, to litigate and determine controversies in cases where such right did not before exist; but if in such a suit issues arise which are clearly legal and cognizable in a court of law, the code does not take away the right to have such issues tried by a jury. Formerly an action like the one at bar could not have been maintained at all; plaintiff would have been compelled to wait until the defendant chose to disturb his possession by an action. The code enabled one in his position to commence the legal contest; but when he thus brings a defendant into court he must be prepared to meet any pertinent issues which the latter may tender, and to try them in the way in which the defendant has the right under the constitution to have them tried.

The nature of the action to quiet title before and after the code provision is clearly stated by Field, C. J., in *Curtis* v. *Sutter*, 15 Cal. 262. At that time the pro-

vision of the statute was substantially as it is now, except that the plaintiff was required to be in possession. The learned judge says: "This statute enlarges the class of cases in which equitable relief could formerly be sought in the quieting of title. It authorizes the interposition of equity in cases where previously bills of peace would not lie. Such bills were of two classes. Those of one class lay where the right which the plaintiff asserted was controverted by numerous persons holding distinct and separate interests depending upon a common source. A right of fishery asserted by one party, and controverted by numerous riparian proprietors on the river, and the right to tithes claimed by a person and controverted by his parishioners, are instances cited by Story where a bill of this nature would lie. Bills of the other class lay where the plaintiff was in possession of real property, and his possession had been disturbed by legal proceedings in which his title had been successfully maintained. To the prosecution of bills of this latter class, the concurrence of three particulars was essential: the possession in the plaintiff, the disturbance of that possession by legal proceeding on the part of the defendant, and the establishment of the right of the plaintiff by judgment in his favor in such proceedings. (*Shepley* v. *Rangely*, Davis, 249.) The necessity of bills of this class naturally arose from the nature of the action of ejectment, which being founded on a fictitious demise between fictitious parties, a recovery therein constituted no bar to another action. Thus the successful party might, by repeated actions, be subjected to vexatious and harassing litigation, and to procure repose, courts of equity interpose and finally determine the controversy. It was in this way, only, that adequate relief could be administered. (*Devousher* v. *Newenhem*, 2 Schoales & L. 208; *Welby* v. *Duke of Rutland*, 6 Brown Parl. C. 575.) Under the statute of this state it is unnecessary for the plaintiff to delay seeking the equitable interposition of

the court, until he has been disturbed in his possession by the institution of a suit against him, and until judgment in such suit has passed in his favor. . It is sufficient if, whilst in the possession of the property, a party out of possession claim an estate or interest adverse to him. He can immediately, upon knowledge of the assertion of such claim, require the nature and character of the adverse estate or interest to be produced, exposed, and judicially determined, and the question of title be thus forever quieted. It does not follow from the fact that the suit is brought in equity that the determination of questions purely of a legal character in relation to the title will necessarily be withdrawn from the ordinary cognizance of a court of law. The court sitting in equity may direct, whenever in its judgment it may become proper, an issue to be framed upon the pleadings and submitted to the jury. Upon the verdict of the jury, if a new trial be not granted, the court will then act, by either dismissing the bill or by adjudging the adverse estate or interest claimed to be invalid and of no effect, .and awarding a perpetual injunction against ·its assertion to the property in question. There is no difficulty in so conducting a suit, under the statute, as to fully protect the legal rights of the parties, and at the same time to secure the beneficial result afforded by a court of equity in bills of peace, which is, repose from further litigation."

In *People* v. *Center*, 66 Cal. 551, which was an action like the one at bar, the court refers to *Curtis* v. *Sutter*, 15 Cal. 262, and says: " It may be the original defendants herein would have been entitled to demand a jury to try the legal issue as to the right of possession, but a jury was expressly waived." And there is the same intimation in *Hyde* v. *Redding*, 74 Cal. 497. Counsel have not called our attention to any cases in this state where the point now under discussion has been clearly decided adversely to appellant's contention, although cases can no doubt be

found where the court, not having its attention closely called to the subject, has assumed that the proceeding under the code is an equitable action, and referred to the general rule that courts of chancery need not call upon juries for assistance. But it is clear that the right to a jury trial cannot be avoided by merely calling an action equitable. If that were so, the legislature, by providing new remedies and new kinds of judgments and decrees in form equitable, could *in all cases* dispense with juries, and thus entirely defeat the constitutional provision on the subject. In *Hyde* v. *Redding*, 74 Cal. 497, the court intimates that the proceeding under section 738 of the code may be either a suit in equity or an action at law. It is really a statutory action. The code confers equitable rights so far as it grants the power to maintain the action at all, and the decree is in form equitable, but if it has to deal with ordinary common-law rights clearly cognizable in courts of law, it is to that extent an action at law. And the proper course to be pursued in such a case is clearly pointed out by Judge Field in *Curtis* v. *Sutter*, 15 Cal. 262.

The point here involved has been more thoroughly considered by the supreme court of Pensylvania than in any other tribunal to which our attention has been called. In that state, the legislature attempted in several different acts to avoid the right of trial by jury by providing new proceedings in equity for the determination of issues which parties clearly had the right to have determined by courts of law and juries, and in every instance the court held either that the act was unconstitutional, or that it should be so construed as not to cut off the right of trial by jury. In one of those cases, the court, in commenting on the attempt above stated, say: "If this could be done, there is not an ejectment in the common-law courts which, by the inversion of parties, could not be brought into a court of equity." (*Haine's Appeal*, 73 Pa. St. 172.) In another case, the court,

speaking of the provisions of the constitution, say: "It cannot mean that the legislature may confer upon the supreme court and the courts of common pleas the power of trying according to the course of chancery any question which has always been triable according to the course of law by a jury." (*Norris's Appeal*, 64 Pa. St. 281.) In another case, the court say: "An act of the assembly transferring any part of the jurisdiction of the common-law courts to a court of chancery would be unconstitutional." (*Tillmes* v. *Marsh*, 67 Pa. St. 508.) The limits of this opinion will not allow more extended quotations from other cases; but the point will be found to be fully discussed and pointedly decided in *Penn. Coal Co.* v. *Snowden*, 42 Pa. St. 488; *Norris's Appeal*, 64 Pa. St. 275; *Haine's Appeal*, 73 Pa. St. 169; and *Tillmes* v. *Marsh*, 67 Pa. St. 507.

In the case at bar, according to the verified answer, defendant was entitled to possession, and was *in the possession* of the disputed premises a short time before the commencement of the action, and was ousted by plaintiff. If, under these circumstances, defendant had commenced an action against plaintiff to recover possession, it would have been conceded by all that either party would have been entitled to a jury trial. But it is equally clear that plaintiff, by first bringing suit, and thus inverting the parties, could not deprive defendant of his right to a jury. If it were not for the provision of the code, plaintiff would have been compelled to wait until defendant commenced his action, and then there would have been no question about the right to a jury; but while the legislature had the power to grant the plaintiff the privilege of himself commencing the suit, it had not the power to give him, and we think did not intend to give him, the privilege of thus depriving defendant of his constitutional right.

We have discussed this point somewhat at length because there is a growing tendency to resort to the stat-

utory action to quiet title when other actions would be more appropriate; and it is well to consider the general nature of the proceeding. But as other difficult questions may hereafter arise where this form of action is used, it is proper to say that the *decision* in the case at bar rests upon the facts of the case. It is decided here only that where the answer shows that the defendant was rightfully in possession, and was ousted by plaintiff and wrongfully kept out of possession, upon the trial of those issues the defendant is entitled to a jury trial.

For the reason above given, the judgment must be reversed; but as there may be another trial of the case, it is necessary to notice another point made by appellant.

2. As we understand from the findings, the court rendered judgment against defendant solely upon the ground that the original notice of location which defendant put on the Waldeck claim on October 7, 1886, — nearly three years before plaintiff's location, — was entirely invalid, and all acts done afterwards worthless, because it was not *posted* in a proper manner. The court found that there was a local mining custom in the district that all notices of location of quartz claims should be in writing, and " posted conspicuously in a conspicuous place upon the claim located, at or near the lode line of said claim, and recorded in the office of the county recorder of said Nevada County." We gather from the findings that defendant's notice was in due form, and was put upon the lode line, and was duly recorded; that they properly marked their boundaries; that they performed annually upon the claim the amount of labor required by law, and on that part of the claim which is in dispute; that their location was made in good faith; and that from October 7, 1886, to April, 1889, — the time when plaintiff's location was made, — they " in all other respects complied with law and custom except as to the manner of posting the notice." The notice was placed on the claim in this way: It was written on one side of a sheet

LXXXVIII. CAL.—9

of paper, which was folded, with the writing inside, and placed upon a mound of rocks three feet high, and upon the notice were placed two flat rocks, so that about three fourths of an inch of the margin of the paper was exposed to view, the rest of the paper being obscured by the two stones which covered it. For this reason the court held that the notice was not conspicuously posted, and that therefore the entire location was void. In so holding, the court, we think, erred. It was not found that the notice was so placed for the purpose of concealing it; but it was found that the location was made in good faith, and that " in posting said notice, defendant, Meister (who posted the same), intended protecting it from the weather, and had made prior locations the same way." It is further found that " other devices were resorted to by miners to protect the notices from the weather, such as covering the notice with glass, or folding it in a box and placing the box in a conspicuous place."

If the plaintiff had attempted to relocate the claim immediately after defendant's notice had been placed there, and before defendant had done further acts of possession, and before there had been any legislation by Congress upon the subject, and the only question had been as to the sufficiency of the posting, still, we think, that the posting, as shown by the findings, would have been sufficient. A substantial compliance with mining customs, where good faith is shown, is certainly sufficient. It appears that various devices were resorted to by miners in the district to protect their notices from the weather. The method which defendant adopted is certainly not more objectionable than " folding it in a box." An artificial mound of rocks on the line of a lode is a conspicuous object, which would naturally attract the attention of one seeking information as to a former location of the lode, and the slightest examination of the mound would result in the discovery of the written no-

tice. Plaintiff should have seen it, and if he did see it, and had the actual knowledge which it gave, but concluded to take advantage of what he deemed a defect in the *manner* of posting, the technical point which he thus made is entitled to but little consideration. It does not appear how much labor and money defendant expended on his claim during the several years preceding plaintiff's entry, except that he expended more than was necessary to comply with the law; but if he had expended large sums of money in developing the mine, and had sold interests to others at high prices, the proposition to forfeit it all because he partly covered his original notice with two stones to protect it from the weather would, we think, have appalled either judge or jury.

But the above view is greatly strengthened when we reflect that under the laws of Congress the original notice cuts but little figure, after the other acts necessary to the valid location of the mining claim have been done. The notice is valuable chiefly as a temporary protection to the locator while the other acts are being performed. Under the law of Congress, "distinctly marking the location upon the ground so that the boundaries may be readily traced" is necessary, and is the main act of original location. (*Holland* v. *M. A. G. Q. M. Co.*, 53 Cal. 149.) In *Gleeson* v. *Martin White Co.*, 13 Nev. 464, Beatty, J., delivering the opinion of the court, speaks of Congressional legislation on the subject as introducing "a system in which the preliminary posting and recording of notices is entirely out of place, except as a means of protecting a claim during the time necessary for tracing the ledge and marking the boundaries of the location. When the location is thus marked, all that the notice and record were ever intended or expected to accomplish is effected in a manner far more satisfactory and complete." We quote the above remarks, not to the point that a mining custom requiring the posting of a notice in a particular way can be wholly disregarded

(which is not necessary here to be decided), but as show-ing additional reasons why such a custom, when invoked years after all other acts of location have been done, should receive a liberal and not a strict construction. Our conclusion is, that — whatever evidence may be pre-sented on another trial — under the facts as shown in the findings before us, the posting of defendant's origi-nal notice should be held to have been a substantial and sufficient compliance with the said custom.

The judgment is reversed, and the cause remanded for a new trial.

DE HAVEN, J., HARRISON, J., GAROUTTE, J., SHARP-STEIN, J., PATERSON, J., and BEATTY, C. J., concurred.