[No. 3818.]

EMERSON V. AKIN.

1. MINING CLAIM—*Discovery in Abandoned Ground.* The location of a lode mining claim must be within the unappropriated land of the public domain. One who has located a mining claim may abandon a portion of it, and may, by a discovery within the part so abandoned, effectually locate another claim. (42, 43)

2. —— *Location—Notice.* The notice required by Rev. Stat., sec. 4197 serves a temporary purpose. Its utmost life is sixty days. In construing the sufficiency of such notice the courts adopt the most liberal rules. The notice being written upon a piece of paper, folded so that no part of the writing appeared, laid upon a stone and held in place by another stone, *held* sufficient, though no other notice so far as appears, was ever posted. (47)

3. —— *Abandonment—Evidence.* Abandonment of a mining claim in the public domain may be proven by the acts of the locator, as well as his declaration. (43)

4. —— *Effect.* Where a mining claim, or any part of it, in the public domain, is abandoned by the locator, without improper motive, what is so abandoned immediately becomes part of the public domain.
*Semble,* otherwise as to a simulated abandonment, with intent to avoid performance of the annual labor, and so prolong the locator's right, without compliance with the statute (Comp. Stat. U. S. sec. 2324). (43, 44)

*Appeal from Chaffee District Court.* HON. CHARLES A. WILKIN, Judge.

MR. G. K. HARTENSTEIN and MR. WALLACE SCHOOL-FIELD for appellant.

MR. GEORGE D. WILLIAMS for appellee.

CUNNINGHAM, Presiding Judge.

This is an ordinary action in support of an adverse pro-ceeding, brought by Akin, the appellee. The trial court in-structed the jury that they could not find in favor of Emerson, the appellant, defendant below, but submitted the question of Akin's title to the jury, and from a verdict and judgment in favor of Akin Emerson appeals. The other facts necessary to an understanding of the contentions involved will appear as we proceed.

1. It appears that Emerson, prior to the location of the Recompense claim, was the owner of another lode claim, known as the Victor, which covered a part of the same ter-ritory embraced within the Recompense claim, the Victor be-ing located long prior to the location of the Recompense. The Recompense claim runs in a general northerly and souther-ly direction, while the Victor runs easterly and westerly, and crosses, almost at right angles, the Recompense claim, the northerly three hundred feet of the latter claim being substan-tially coincident with a block of about three hundred square feet near the center of the Victor claim. Emerson placed the discovery notice of the Recompense claim within the territory of the Victor claim, or, according to his contention and theory, within what had been a portion of the Victor claim. Emerson contends that he, at and prior to the location of the Recom-pense claim, abandoned that portion of the Victor claim which was in conflict with the Recompense. The discovery notice which Emerson posted for the purpose of initiating title to the Recompense lode contained a clause reading as follows:

"This portion of the Victor claim being excluded from that claimed by this location."

This discovery notice was introduced in evidence, and in addition thereto, Emerson testified explicitly that it was his intention to abandon, and that he did abandon, that portion of the Victor claim which he sought to embrace within the Recompense. There was no evidence introduced that tended in any wise to rebut this showing of abandonment by Emerson. The trial judge refused to give instructions tendered by Emerson, submitting, properly, as we believe, the question of abandonment, to the jury, but on the contrary, he instructed the jury as follows:

"Another of these requirements is that the discovery on which the location of a claim is made must be made and must exist upon some part of the public mineral domain not already occupied and held under a prior and subsisting mining location."

Of course this preliminary announcement correctly states the law, but, immediately following this, the jury was instructed as follows:

"And respecting the alleged discovery and location on the part of the defendant here, of the so-called Recompense lode mining claim, the jury is instructed that from all the testimony in this case, before the jury, the facts are insufficient to show either that the ground on which the discovery was made was unoccupied as lode mining ground at that time  *  *  * and that therefore, the acts and doings of defendant Emerson for the location of the said Recompense claim were ineffective and the jury in this case may not find a verdict in favor of the said defendant respecting that part of conflict ground included within the said Recompense claim."

It is evident from what we have quoted that it was the opinion of the trial judge that Emerson could not abandon a part of the Victor claim, all of which he owned, for the purpose of initiating title to another claim, the Recompense, and that, because the discovery on which the location of the Recompense claim was based was made within the boundary

of the Victor, therefore, as a matter of law, the location of the Recompense was absolutely void. In this respect we are persuaded that the learned trial judge fell into error. Of course, there can be no controversy touching the rule which requires that location of a mining claim must be made upon an unappropriated part of the public mineral domain, but it is equally true that abandonment is a matter of intention. The rule supporting these two propositions has been announced so often and so universally that it requires the citation of no supporting authority. We know of no rule, however, that forbids the abandonment by an owner of a valid mining claim, or any part thereof. And when any part of a mining claim is, in good faith, abandoned by the owner, the title of the part thus abandoned reverts to the government. Abandonment may be proven by the acts of the original owner, as well as by his words and statements. If Emerson were now attempting to patent the Victor lode, the very fact that he located the Recompense across it, and based such location upon a discovery made upon the Victor claim, would be competent evidence against him to show an anbandonment of, at least, that part of the Victor claim covered by the Recompense. Or, if some person other than Emerson had thus located the Recompense across the Victor lode, *with the acquiescence and approval of Emerson,* we think it clear that the courts would hold that he had voluntarily abandoned at least so much of the Victor as was covered by the Recompense. We are aware of no authority which would prevent Emerson, under the circumstances here presented, from abandoning that portion of the Victor claim covered by the Recompense, and thereafter locating the Recompense as he did locate it, or as he says he located it. Surely no one's rights were invaded by his conduct in this behalf, and the policy of the government to encourage the development of its mineral domain may be said to have been advanced. What effect the conduct of Emerson in abandoning a part of the Victor claim, if he did abandon it, may have upon his

claim of title to what remained of the Victor lode not conflict-
ing with the Recompense, we are not called upon to consider.

If the owner of a claim abandons any part of it from
any improper motive, such, for instance, as to escape the an-
nual assessment, and thereby projecting, or attempting to
project, his rights one year into the future, without doing his
annual assessment work, then it might well be that such aban-
donment would be held to have been prompted by ulterior mo-
tives, and therefore void. But there was no evidence in this
case that Emerson was actuated by such motives.

2. The trial judge further instructed the jury that Emer-
son had not properly complied with the statutes of Colorado
in the matter of posting his discovery notice on either the
Recompense or the Recompense No. 2 claim, and for that
reason the jury were advised they could not return a verdict
in favor of Emerson for that part of the conflicting ground
included within the boundary of either of said claims. This
necessitates a brief statement of what Emerson's evidence con-
cerning the posting of his notices discloses. No question can
be made as to the sufficiency of the discovery notices; the sole
contention on this point apparently is that Emerson did not
comply with the requirements of the statute in the manner of
posting the notice on each of the claims. From the defend-
ant's testimony, considered in the light most favorable to him,
we learn that the notice on the Recompense claim:

"Was written on a piece of white paper. The wood lying
around was rotten and not fit to write a notice on, and I
wrote it on a piece of white paper, and erected a stake, and
placed the notice upon it—the white paper would simply be a
speck alongside of the stake—and put it in the cut. I did not
fasten the notice on the stake. It was leaning up against the
side of the cut, and the notice was placed on the surface rock,
and another rock put on top of it so it would not blow away,
and the fold of white paper stuck up the side a piece. * *
* I did not put anything on the post. I put it in the open cut.
it was leaning up against the side of the cut, then the paper

was put up so that it would show above that; of course that was up several feet above the ground. It was placed on the nearest hand side of the cut as you go in. I mean that the notice was several feet above the bottom of the stake which I set up. * * * Now it was put down with this large fold sticking up beside the stake, like that (indicating) ; a rock was put on this point of it here to hold it up. The writing was not exposed. The writing was inside of the fold. I could not tack it up. The notice was laid on a rock in that fashion (indicating) and another rock placed on it in that fashion (indicating). The rock did not cover up the whole of the notice; just the way it is there (indicating) ; it was a pretty good sized rock. The only part exposed was that part which stuck up. There was no difficulty on the part of Mr. Akin and Mr. Hershberger in finding it . (Meaning the notice, and referring to a time when the parties referred to went with witness to look at these discovery notices.) The rock had not been laid on top of the entire notice, just a part of it, I think. I should think that probably half of the fold was sticking out, an inch and a half or two inches of the notice. The notice was legible and could be read when taken out of there. The portion which was sticking out had been exposed to the weather."

This notice was posted on August 17th, the day the claim was located. Witness testified that he was not back to the claim between August 17 and October 16, when it is admitted on all hands that the parties were able to find the notice, the sole contention being as to how much search was required before the notice was found. The location of the Recompense was made in an old abandoned tunnel or adit driven into the side of the mountain.

There are very few authorities to be found directly in point, or sufficiently parallel in their facts as to be controlling or even helpful in this case. The nearest parallel case appears to be that of *Donahue v. Meister*, 88 Calif. 121, 25 Pac. 1096, 22 Am. St. Rep. 283. From the opinion in that case it ap-

pears that the facts as to the posting of the discovery notice are as follows:

"The notice was placed on the claim in this way: it was written on one side of a sheet of paper, which was folded with the writing inside, and placed upon a mound of rock three feet high, and upon the notice were placed two flat rocks, so that about ¾ of an inch of the margin of the paper was exposed to view, the rest of paper being obscured by the two stones which covered it."

Thus it will be seen that the methods pursued in posting the discovery notice in the *Donahue* case were strikingly similar to the methods pursued by Emerson in posting the discovery notice on the Recompense claim. In the *Donahue* case the trial court ruled that the notice was not conspicuously posted, and that its posting did not comply with the rule then in vogue in California, which required that the discovery notice should be "posted conspicuously in a conspicuous place." Our statute requires that the locator shall post, "at the point of discovery on the surface *a plain sign or notice,*" etc. If there be any difference between the California rule and the Colorado statute pertaining to the posting of the discovery notice, the rule of the former state is more exacting as to the prospector than our statute. The Supreme Court of California, in the *Donahue* case, reversed the trial court, saying:

"In so holding, the court, we think, erred. It was not found that the notice was so placed for the purpose of concealing it; but it was found that the location was made in good faith, and that 'in posting said notice, defendant, Meister (who posted the same), intended protecting it from the weather, and had made prior locations the same way.' It is further found that 'other devices were resorted to by miners to protect the notices from the weather, such as covering the notice with glass, or folding it in a box and placing the box in a conspicuous place.' If the plaintiff had attempted to relocate the claim immediately after defendant's notice had been placed there, and before defendant had done further acts of

possession, and before there had been any legislation by congress upon the subject, and the only question had been as to the sufficiency of the posting, still, we think, that the posting, as shown by the findings, would have been sufficient."

In other words, the Supreme Court of California ruled, as a matter of law, that the posting in the *Donahue* case was sufficient. It is only necessary for us to hold (and that is all we do hold) that the trial court in the case at bar erred in holding, as a matter of law, that the posting was insufficient. The entire opinion in the *Donahue* case may be read with profit. But we desire to call attention to the fact that in reversing the lower court and remanding the *Donahue* case for new trial, the Supreme Court of California, in its opinion, used this further language:

"Our conclusion is, that—whatever evidence may be presented on another trial—under the facts as shown in the findings before us, the posting of the defendant's original notice should be held to have been a substantial and sufficient compliance with the said custom," thus unequivocally directing the trial court to find, on the second trial, as a matter of law, that the evidence as to the posting of the discovery notice was sufficient.

In *Upton v. Santa Rita M. Co.*, 14 N. M. 96, 89 Pac. 285, it is said:

"We do not believe this to be within the spirit of mining laws, which have ever held that, in the matter of location notices, the courts shall take a liberal, and not a narrow view."

It is further announced in the Upton case that:

"The posting of the location, however, is not the basis of the title. It is simply a provision of the law by which, in connection with the subsequent record, the world may have notice that the lode discovered is being claimed as a mining location."

In other words, this preliminary posting serves, and is only intended to serve, a temporary purpose; its utmost life is sixty days, within which time the locator must sink his shaft

and stake his claim at all the corners and the centers of the two side lines. It is not probable that within these sixty days any very great wrong can be done the public or any individual, if the discovery notice should be defective in form, or in the method of its posting, and for this reason, we apprehend, the courts have universally adopted and applied the most liberal rules in considering the sufficiency of the discovery notice, both as to the form and the posting thereof.

In the case of *Gird v. California Oil Co* ( *C. C.* ), 60 Fed. 543, it was held that a discovery notice placed in a tin can and the can placed by the locator on a shelf in a rock mound was sufficient, and answered the purpose for which it was required.

The posting of the discovery notice on the Recompense No. 2, being even more conspicuous than was the posting of the notice on the Recompense claim, it is not necessary that we should state the facts with reference thereto, or comment upon them. If the action of the trial court, in taking from the jury the question of the sufficiency of the posting of the notice on the Recompense, constituted prejudicial error, as we think it did, then *a fortiori*, error was committed in taking the same question, as applied to Recompense No. 2, from the jury.

For the reasons we have assigned, the judgment of the trial court is reversed, and the case remanded for further proceedings in harmony with the views herein expressed.

*Reversed and Remanded.*

COURT OF APPEALS—Decided April 13, 1914. April T. 1914.