Cunningham, Presiding Judge.
This is an ordinary action in support of an adverse proceeding, brought by Akin, the appellee. The trial court instructed the jury that they could not find in favor of Emerson, the'appellant, defendant below, but submitted the question of Akin’s title to the jury, and from a verdict and judgment in favor of Akin Emerson appeals. The other facts necessary to an understanding of the contentions involved will appear as we proceed.
1. It appears that Emerson, prior to the location of the Recompense claim, was the owner of another lode claim, known as the Victor, which covered a part of the same territory embraced within the Recompense claim, the Victor being located long prior to the, location of the Recompense. The Recompense claim runs in a general northerly and .southerly direction, while the Victor runs easterly and westerly, and crosses, almost at right angles, the Recompense claim, the northerly three hundred feet of the latter claim being substantially coincident with a block of about three hundred square feet near the center of the Victor claim. Emerson placed the discovery notice of the Recompense claim within the territory of the Victor claim, or, according to his contention and theory, within what had been a portion of the Victor claim. Emerson contends that he, at and prior to the location of the Recompense claim, abandoned that portion of the Victor claim which .was in conflict with the Recompense. The discovery notice which Emerson posted for the purpose of initiating title to the Recompense lode contained a clause reading as follows:
“This portion of the Victor claim being excluded from that claimed by this location.”
*42 This discovery notice was introduced in evidence, and in addition thereto, Emerson testified explicitly that it was his intention to' abandon, and that he did abandon, that portion of the Victor claim which he sought to embrace within the Recompense. There was no evidence introduced that tended in any wise to rebut this showing of abandonment by Emerson. The-trial judge refused to give instructions tendered by Emerson, submitting, properly, as we believe, the question of abandonment, to the jury,.but on the contrary, he instructed the jury as follows :
“Another of these requirements is that the discovery on which the location of a claim is made must be made and must exist upon some part of the public mineral domain not already occupied and held under a prior and subsisting mining location.”
Of course this preliminary announcement correctly states the law, but, immediately following this, the jury was instructed as follows:
“And respecting the alleged discovery and location on the part of the defendant here, of the so-called Recompense lode mining claim, the jury is instructed that from all the testimony in this case, before the jury, the facts are insufficient to) show either that the ground on which the discovery was made was unoccupied as lode mining ground at that time * * * and that therefore, the acts and doings oí defendant Emerson for the location of the said Recompense claim were ineffective andi the jury in this case may not find a verdict in favor of the said defendant respecting that part of conflict ground included within the said Recompense claim.”
It is evident from what we have quoted that it was the opinion of the trial judge that Emerson c'oul-d not abandon a part of the Victor claim, all of which he owned, for the purpose of initiating title to another claim, the Recompense, and’ that, because the discovery on which the location of the Recompense claim was based was made within the boundary *43 of the Victor, therefore, as a matter of la.w, the location of the Recompense was absolutely void. In this respect we are persuaded that the learned trial judge fell into- error. Of course, there can be no controversy touching the rule which requires that location of a mining claim must be made upon an unappropriated part of the public mineral domain, but it is equally true that abandonment is a matter of intention. The rule supporting these two propositions has been announced so often and so universally that it requires the citation of no> supporting authority. We know of no rule, however, that forbids the abandonment by an owner of a valid mining claim, or any part thereof. And when any part of a mining claim is, in good faith, abandoned by the owner, the title of the part thus abandoned reverts to the government. Abandonment may be proven by the acts of the original owner, as well as by his words and statements. If Emerson were now attempting to patent the Victor lode, the very fact that he located the Recompense across it, and based such location upon a discovery made upon the Victor claim, would be competent evidence against him to show an anbandonment of, at least, that part of the Victor claim covered by the Recompense. Or, if some person other than Emerson had thus located the Recompense across the Victor lode, with the acquiescence and approval of Emerson, we think it clear that the courts would hold that he had voluntarily abandoned at least so much of the Victor as was covered by the Recompense. We are aware of no authority which would: prevent Emerson, under the circumstances here presented, from abandoning that portion of the Victor claim covered by the Recompense, and thereafter locating the Recompense as he did locate it, or as he says he located it. Surely no one’s rights were invaded by his conduct in this behalf, and the policy of the government- to encourage the development of its mineral domain may be said to have been advanced. What effect the conduct of Emerson in abandoning a part of the Victor claim, if he did abandon it, may have upon his *44 claim of title to what remained of the Victor lode not conflicting with the Recompense, we are not called upon to consider.
If the owner of a claim abandons any part of it from any improper motive, such, for instance, as tb escape the annual assessment, and thereby projecting, or attempting to project, his rights one year into' the future, without doing his annual assessment work, then it might well be that suc'h abandonment would be held to have been prompted by ulterior motives, and therefore void. But there was no evidence in this case that Emerson was actuated by such motives.
2. The trial judge further instructed the jury that Emerson had not properly complied with the statutes of Colorado, in the matter of posting his discovery notice on either the Recompense or the Recompense No. 2 claim, and for that reason the jury were advised they could not return a verdict, in' favor of Emerson for that part of the conflicting ground included within the boundary of either of said claims. This, necessitates a brief statement of what Emerson’s evidence concerning- the posting of his notices discloses. No question Can be made as to- the sufficiency of the discovery notices; the sole-contention on this point apparently Is that Emerson did not comply with the requirements of the statute' in the manner of posting the notice on each of the Claims. From the defendant’s testimony, considered in the light most favorable to' him,, we learn that the notice on the Recompense claim:
“Was written on a piece of white paper. The wood lying-around was rotten and not fit to write a notice on, and I wrote it on a piece of white paper, and erected a stake, and placed the notice upon it — the white paper would simply be a. speck alongside of the stake — and put it in' the cut. I did not fasten the notice on the stake. It was leaning up against the-side of the cut, and the notice was placed on the surfacé rock, and another rock put on top. of it so it would not blow away, and the fold, of white paper stuck up the side a piec'e. * *' * I did not put anything on the post. I put it in the open cut. it was leaning up against_ the side of the cut, then the paper- *45 was put up- so that it would show above that; of course that was up several feet above the ground. It was placed on the nearest hand side of the cut as you go- in. I mean that the notice was- several-feet above the bottom of the stake which I set up. * * * Now it was put down with this large fold sticking- up- beside the stake, like that (indicating) ; a. rock was put on this point of it here to- hold it up. The writing was not exposed. The writing was inside of the fold. I Could not tack it up. The notice was laid on a rock in that fashion (indicating) and another rode placed on it in that fashion (indicating) . The rock did not -cover up the whole of the notice; just the way it is there (indicating) ; it was a pretty good sized rock. The only part exposed was that part which stuck up. There was no difficulty on the part of Mr. Akin and Mr. Hershberger in finding it. (Meaning the notice, and referring to a time when the parties referred to- went with witness to look at these discovery notices.) The rock had not been laid on top of the entire notice, just a part of it, I think. I should think that probably half of the fold was sticking out, an inch and a half or two inches o-f the notice. The notice was legible and could be read when taken out of there. The portion which was- sticking out had been exposed to the weather.”
This notice was posted on August .17th, the day the claim was located. Witness testified that he was not back to the claim between August 17 and October 16, when it is admitted on all hands that the parties were able to find the notice, the sole contention being as to how much, search was required before the notice was found. The location of the Recompense was, made in an old abandoned tunnel or adit driven into the side of the mountain.
There are very few authorities to be found directly in point, or sufficiently parallel in theit facts as to be Controlling or even helpful in this case. The. nearest parallel case appears to be that of Donahue v. Meister, 88 Calif. 121, 25 Pac. 1096, 22 Am. St. Rep. 283. From the opinion in that case it ap *46 pears that the facts as to the posting of the discovery notice are as follows:
“The notice was placed on the claim in this way: it was written on one side of a sheet of paper, which was folded with the writing inside, and placed upon a mound of rock three feet high, and upon the notice were placed two. flat rocks, so that about ¿4 of an inch of the margin of the paper was exposed to view, the rest of paper being obscured by the'two. stones which covered it.”
Thus it will be seen that the methods pursued in posting the discovery notice in the Donahue case were strikingly similar to the methods pursued by Emerson in posting the discovery notice on the Recompense claim. In the Donahue case the trial court ruled that the notice was not conspicuously posted, and that its posting did not comply with the rule then in vogue in California, which required that the discovery notice should be “posted conspicuously in a conspicuous place.” Our statute requires that the locator shall post, “at the point of discovery on the surface a plain sign or notice’’ etc. If there be any difference between the California rule and the Colorado statute pertaining to the posting of the discovery notice, the rule of the former state is more exacting as to the prospector than our statute. The Supreme Court of California, in the Donahue case, reversed the trial court, saying:
“In so holding, the court, we think, erred. It was not found that the notice was so placed for the purpose of concealing it; but it was found that the location was made in good faith, and that ‘in posting said notice, defendant, Meister (who posted the same), intended protecting it from the weather, and had made prior locations the same way.’ It is further found that ‘other devices, were resorted to. by miners to- protect the notices, from the weather, such as covering the notice with glass., or folding it in a box and placing the box in a conspicuous place.’ If the plaintiff had attempted to relocate the claim immediately after defendant’s notice had been placed there, and before defendant had done further acts of *47 possession, and before there had been any legislation by congress upon the subject, and the only question had been as to the sufficiency of the posting, still, we think, that' the posting, as shown by the findings, would have been sufficient.”
In other words, the Supreme Court of California ruled, as a matter of law, that the posting in the Donahue case was sufficient. It is only necessary for us to hold (and that is all we do hold) that the trial court in the case at bar erred in holding, as a matter of law, that the posting was insufficient. The entire opinion in the Donahue Case may be read with profit. But we desire tO' call attention to the fact that in reversing the lower court and .remanding the Donahue case for new trial, the Supreme Court of California, in its opinion, used this further language:
“Our conclusion is, that — whatever evidence may be presented on another trial — under the facts as shown in the findings before us, the posting of the defendant’s original notice should be held to have been a substantial and sufficient compliance with the said custom,” thus unequivocally directing the trial court to’ find, on the second trial, as a matter of law, that the evidence as to the posting of the discovery notice was sufficient.
In Upton v. Santa Rita M. Co., 14 N. M. 96, 89 Pac. 285, it is said:
“We do not believe this to be within the spirit of mining laws, which have ever held that, in the matter of location notices, the courts shall take a liberal, and not a narrow view.”
It is further announced in the Upton Case that:
“The posting of the location, however, is not the basis of the title. It is simply a provision of the law by which, in connection with the subsequent record, the world may have notice that the lode discovered is being claimed as a mining location.”
In other words, this preliminary posting serves, and is only intended to> serve, a temporary purpose; its utmost life is sixty days, within which time the locator must sink his shaft *48 and stake his claim at all the c'orners and the centers of the two side lines. It is not probable that within these sixty days any very great wrong can be done the public or any individual, if the discovery notice should be defective in form, or in the method of its posting, and for this reason, we apprehend, the courts have universally adopted and applied the mo-st liberal rules in considering the sufficiency of the discovery notice, bo-th as to the form and the posting thereof.
Court of Appeals
Decided April 13, 1914.
April T. 1914.
In the case of Gird v. California Oil Co (C. C.), 60 Fed. 543, it was held that a discO-very notice placed- in a tin. can and the can placed by the locator on a shelf in a rock mound was sufficient, and answered the purpose for which it was required.
The posting of the discovery notice on the Recompense No. 2, being even more conspicuous than, was the posting of the notice on the Recompense claim, it is not necessary that we should state the facts with reference thereto, o-r comment upon them. If the action of the trial court, in taking from the jury the question of the sufficiency of the posting of the notice on the Recompense, constituted prejudicial error, as think it did, then a fortiori, error was -committed in taking the same question, as applied to Recompense No. 2, from the jury.
For the reasons we have assigned, the judgment of the trial court is reversed, and the case remanded for further proceedings in harmony with the views herein expressed.

Reversed and Remanded.