[Civ. No. 844. Fourth Appellate District.—March 23, 1933.]

ROSS L. SARNOW et al., Appellants, v. BROOKE P. WOOD et al., Respondents.

Robert T. Linney and Harold F. Clary for Appellants.

Alfred Siemon and Siemon & Claflin for Respondents.

CAMPBELL, J., *pro tem.*—This case involves conflicting mining claims growing out of mining locations of the respective parties upon the same ground.

The complaint is in the usual form of complaint in an action to quiet title. The answer traverses the allegations of the complaint and pleads the acquisition of the property

described in the complaint by the respondents under the mining location as a separate defense. The separate defense is pleaded specifically and sets forth all the necessary requirements to make a valid mining location upon the public domain. The court found in favor of the respondents and their special defense and gave judgment accordingly. Appellants contend that the judgment of the trial court was erroneous and should be reversed. The questions presented are: (1) Were the boundaries of the mining claim sufficiently marked; (2) did the appellants do the annual assessment work; (3) does the evidence offered at the trial support the findings of fact; (4) do the findings of fact support the conclusions of law and judgment. The issues raised by the pleadings are broad enough to include all questions going to the legality or sufficiency of the mining locations of the respective parties. ■ The allegations of the complaint, except that which states the respondents' claim and interest adverse to the appellants, are all found to be untrue in the first paragraph of the findings. The finding is in the same general language as the pleading and is therefore legally sufficient, and it may be justified on any specific ground, although not particularly stated, that would render plaintiff's mining claim invalid.

■ The second paragraph of the findings adopts and finds all of the allegations of the separate defense to be true. This defense specifically pleads all of the conditions precedent to a valid mining location upon the public domain, including monumenting the corners and marking the boundaries, as well as continued exclusive possession of the ground since the time of the original discovery, together with the performance of the annual assessment work required by law. The finding last mentioned excludes the idea of possession by appellants as well as the idea that they may have done or performed any annual assessment work subsequent to the date of discovery by respondents on February 23, 1928.

Thus the first two questions on this appeal, viz., (1) were the boundaries of the mining claim sufficiently marked, and (2) did the appellants do the annual assessment work, have been by the trial court decided adversely to appellants.

It becomes necessary to quote some of the testimony relating to the marking of the boundaries of the mining claim

in question, in order to determine whether the findings of the trial court are sustained by the evidence.

The witness A. E. Stegeman, a civil engineer and surveyor who had recently made a survey of the land in question, testified among other things, as follows: "Q. I will ask you this: Could you go on the ground there and determine from the markings on the ground what the boundaries of the Arminta Mae claim were? . . . A. If I was to go there in the capacity of a mineral surveyor, I could not survey the claim, because the boundaries are not on the ground."

A witness, Mrs. Sorrels, testified as follows: "Q. Now what was the east corner, southeast corner of the claim; how was that marked? A. I don't remember just how it was. I think it was—that was near the fence too, but I don't remember how it was marked, whether it was a tree, an oak or a mahogany tree. Q. Any brush in there? A. Yes, sir. Q. What kind of brush? A. It was mahogany brush, and there is chaparral brush, and there is buckeye brush and chin oak. Q. And pretty thick there? A. In places it is very thick so you have to crawl on your hands and knees. Q. What was the marking on the southwest corner of the claim? A. I don't remember that one, either. Q. Was any brush in there? A. Yes, sir. Q. Had any of it been cut out? A. I didn't notice that there had been when I was there."

And Mr. Wood, one of the respondents, testified as to the markings on the claim on the ground, as follows: "Q. And did you see the outlines of the corners, that is, the markings of the claim that is usually made? A. No, sir. Q. You didn't examine those? A. I examined them, but I couldn't find them. The lines wasn't brushed out."

Carl Sarnow, one of the appellants, testified as follows: "Q. Well, did you erect any monument, or make any marks on the ground, except the one at the point of discovery? A. A very few days after that, two or three days after that, I might say. Q. All right. A. We established our corners, and just the center of the claim, and laid out the claim. Q. And how did you do that? A. By erecting a monument of stone at what we call the west end center, a monument of stone at the east and center, and also the four corners of the claim."

On cross-examination the same witness testified as follows: "Q. What did you do toward marking the side lines? A. Didn't do a thing on the side lines. Q. What did you do toward marking the end lines? A. Just made in the center, erected a monument of stone and blazed on trees on both centers, marked with a pencil, and so forth. Q. Blazed on trees on end centers? A. Yes, sir, and marked on the blaze. Q. Was that monument of stone there? A. Yes, sir."

Section 1426a of the Civil Code provides that: "The locator must define the boundaries of his claim so that they may be readily traced, and in no case shall the claim extend more than fifteen hundred feet along the course of the vein or lode, nor more than three hundred feet on either side thereof, measured from the center line of the vein at the surface."

It is not enough to claim so many feet along the vein (*Newbill* v. *Thurston,* 65 Cal. 419 [4 Pac. 409]), or to post notices at each end of the center line (*Holland* v. *Mount Auburn G. O. Min. Co.,* 53 Cal. 149). When the corners have been marked but no side lines are laid down, it becomes a question of fact for the court to determine whether the boundaries can be traced (*DuPrat* v. *James,* 65 Cal. 555 [4 Pac. 562]); and when it has been shown that monuments or stakes have been set at the corners and at the center of each end, it becomes a question of fact whether or not the conformation of the land was such that such monuments so marked the boundaries that they might be readily traced. (*Taylor* v. *Middleton,* 67 Cal. 656 [8 Pac. 594].) Distinctly marking the location on the ground so that it can be readily traced is the principal act of the location. (*Donahue* v. *Meister,* 88 Cal. 121, 131 [25 Pac. 1096, 22 Am. St. Rep. 283].) In *United States* v. *Castillero,* 2 Black, 1, 191 [17 L. Ed. 360], the United States Supreme Court said that marking boundaries was necessary or the claim "would be void for uncertainty", and "compliance with the requirement is essential to show what extent of the public domain has been segregated from the mass of such lands and has passed into private ownership".

The implied finding of the trial court that the appellants did not define the boundaries of their claim so that they may be readily traced is amply supported by the evidence.

There is a sharp conflict in the testimony as to whether or not the respondents did the annual assessment work, but the evidence is sufficient to support the implied finding that no work had been done by appellants sufficient to hold the claim. We think that under the evidence the trial court was justified in holding against appellants upon both grounds which have been discussed, and that either the failure of the appellants to initiate a valid claim or their failure to do the annual assessment work will alone warrant the judgment.

The judgment is therefore affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 18, 1933, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 22, 1933.