IOWA-MISSOURI GRAIN COMPANY, Appellant, v. HARVE POWERS,
Appellee; BANK OF GENTRY, Intervener.

**CORPORATIONS: Shares—Transfer as Collateral—Priority of Lien.**
1  The lien of a holder of corporate stock as collateral security for
the debt of the stockholder is superior to the lien of the corpora-
tion itself on said stock for a debt due to the corporation from the
stockholder when the corporate lien arises under a by-law which
has never been posted, as required by law, and as to which the col-
lateral holder had no notice, express or implied.

**CORPORATIONS: By-Laws—Posting.** The statutory requirement that
2  the corporate by-laws be ''posted'' in the principal place of busi-
ness of the corporation is not complied with by writing said by-
laws in a bound volume and keeping said book on a desk in said
office. Especially is this true when the external appearance of the
book does not in any manner indicate its contents. (Sec. 1624,
Code, 1897.)

**CORPORATIONS: Shares—Transfer as Collateral—Timely Notice.** No-
3  tice to the secretary of a corporation that the corporate stock of the
corporation is held as collateral security for the debt of the stock-
holder is timely when given before an adversely interested party
has changed his position because of the want of such notice.

*Appeal from Ringgold District Court.*—HOMER A. FULLER,
Judge.

JANUARY 16, 1923.

OPINION ON REHEARING FEBRUARY 5, 1924.

REHEARING DENIED JUNE 28, 1924.

ACTION in equity, in the name of the Iowa-Missouri Grain
Company, a corporation, to foreclose a lien upon 20 shares of
stock issued by said corporation to the defendant. The Bank
of Gentry, Incorporated, of Gentry, Missouri, to which the de-
fendant Powers was also indebted on a promissory note, and to
which he had assigned the stock certificate held by him as col-
lateral security therefor, intervened, and sought to foreclose

its lien upon said stock. Judgment on both notes was duly entered against the defendant, who defaulted, and also a decree establishing the priority of intervener's lien and foreclosing the same as against both plaintiff and defendant. Plaintiff appeals.—*Affirmed.*

*Frank F. Wilson* and *Clark & Byers,* for appellant.

*Lewis & Lewis, F. F. Fuller,* and *D. D. Reeves,* for appellee.

STEVENS, J.—Defendant was one of the original incorporators of appellant company, and owned 20 shares of its stock, evidenced by Certificate No. 24. On July 18, 1919, the defend-

1. CORPORATIONS: shares: transfer as collateral: priority of lien.

ant executed a promissory note to appellant for $1,345.66, due one year after date. On May 8, 1920, he executed and delivered to the intervener the note upon which its cause of action is based, for $2,705, due 90 days after date. On the same day, he assigned the certificate for the 20 shares of stock to intervener, as collateral security for this note. The real controversy between appellant and intervener is as to the priority of their respective liens upon the stock of the defendant. Appellant bases its claim to a lien thereon upon the following provision of its by-laws:

"Article II, Section 4: The corporation shall have a first lien on all the shares of its capital stock and upon all dividends declared upon the same, for any indebtedness of the respective holder thereof to the corporation."

The intervener's claim that its lien is prior to that of appellant is bottomed upon the alleged fact that the transfer thereof was made to it by the defendant without notice on its part, actual or constructive, of the by-law of appellant giving it a lien upon said stock for any indebtedness owed to it by the defendant.

The provisions of the statute applicable to the facts of this case are as follows:

"Sec. 1624. A copy of the by-laws of the corporation, with the names of all of its officers, must be posted in the principal places of business subject to public inspection."

Portions of Code Section 1626 are as follows:

"The transfer of shares is not valid, except as between the parties thereto, until regularly entered upon the books of the company, showing the name of the person by and to whom transferred, the numbers or other designation of the shares, and the date of the transfer; * * * When any shares of stock shall be transferred to any person, firm or corporation as collateral security, such person, firm or corporation may notify in writing the secretary of the corporation whose stock is transferred as aforesaid, and from the time of such notice, and until written notice that said stock shall have ceased to be held as collateral security, said stock so transferred and noticed as. aforesaid shall be considered in law as transferred on the books of the corporation which issued said stock, without any actual transfer on the books of such corporation of such stock. In such case, it shall be the duty of the secretary or cashier of the corporation or of the person or firm to which such stock shall have been transferred as collateral security at once, upon its ceasing to be so held, to inform the secretary of the corporation issuing such stock of such fact. The secretary of the company whose stock is transferred as collateral shall keep a record showing such notice of transfer as collateral, and notice of discharge as collateral, subject to public inspection. * * *"

The right of appellant to a lien upon the stock, under the above provisions of its by-laws, to the extent of any indebtedness owed to it by the defendant, is conceded by intervener and fully sustained by the decisions of this court. *Farmers' & Traders' Bank v. Haney,* 87 Iowa 101; *Des Moines Nat. Bank v. Warren County Bank,* 97 Iowa 204; *Dempster Mfg. Co. v. Downs,* 126 Iowa 80. To be effective, however, as against the claims of the assignee, it must have had notice, actual or constructive, of such by-law at the time of the transfer. *Des Moines Nat. Bank v. Warren County Bank,* supra; *Dempster Mfg. Co. v. Downs,* supra; *Fee v. National Masonic Acc. Assn.,* 110 Iowa 271.

Constructive notice of the provisions of the by-laws will be imputed to third parties only if a copy thereof is posted in the principal place of business of the corporation, so as to be sub-

ject to public inspection; and, unless the statute is complied with in respect to posting, a stranger will not be bound thereby. *Fee v. National Masonic Acc. Assn.,* supra; *Dempster Mfg. Co. v. Downs,* supra; *Des Moines Nat. Bank v. Warren County Bank,* supra.

Whether or not the by-laws were posted, as required by statute, presents the first troublesome question for decision. The evidence on this point is without dispute. It shows that the original book containing the by-laws was kept in the office of appellant, on top of one of the desks therein. The book is not described. Charles Teale, who was in charge of appellant's office as manager, testified that the book had been kept "free of access to all parties. Nobody has ever been denied the right to inspect them." Another witness testified that the book was in sight at all times on one of the desks around the office. After this action was commenced, a typewritten copy of the by-laws was in fact posted in appellant's principal office; but the reason given for this posting was that the book was desired for use by its attorney, and the copy was posted as a substitute therefor.

2. CORPORATIONS: by-laws: posting.

Section 1624 is for the benefit of the public, and for the protection of all persons affected by the by-laws of the corporation. *Des Moines Nat. Bank v. Warren County Bank,* supra. The specific requirement of the statute is that a *copy* of the by-laws be posted in the corporation's principal place of business, "subject to public inspection." It may be conceded, of course, that the posting of the original by-laws in the manner required for posting a copy would, in all respects, be the equivalent thereof. What is meant by the word "posted?"

Webster's Dictionary defines the verb "post" as follows:

"To attach to a signpost or other usual place of affixing public notices; to advertise; as, to post a notice."

See *Voss v. Terrell,* 12 Tex. Civ. App. 439 (34 S. W. 170).

The Supreme Court of Minnesota, in *Thoreson v. Susens,* 127 Minn. 84 (148 N. W. 891), defined the term "posted notice," as used in a statute which required the county superintendent to "cause ten days' posted notice to be given in each district affected," as follows:

"The posting, at the beginning of the prescribed period of notice, of a copy of the notice, * * * in a manner likely to attract attention, in each of three of the most public places in the district."

The Supreme Court of Wisconsin, in *Allen v. Allen,* 114 Wis. 615 (91 N. W. 218), defined the words "to post," as used in a statute requiring notice of a tax sale to be posted in some conspicuous place in the treasurer's office, as follows:

"The word 'post,' when used in the present connection, means 'to attach to a post, a wall, or other usual place of affixing public notices' (Webster's International Dictionary); 'to bring to the notice or attention of the public by affixing to a post, or putting up in some public place' (Standard Dictionary)."

The word "post," as used in Section 1624, it seems to us, must mean something more than the mere placing of the book of the corporation, containing its original articles, upon the top of a private desk in its principal office. The public is naturally not inclined, upon entering a private office, to inspect such books of the proprietor's as may be observed lying upon the top of a private desk. To do so would ordinarily be an impertinence. So far as the record in this case discloses, there was nothing in the appearance of the book, or anything printed or written thereon, to indicate that it contained the appellant's by-laws, or that it was "subject to public inspection." If the placing of the book containing the by-laws upon a private desk in the principal business office of a corporation could, under any circumstances, be held to meet the requirements of the statute, there would certainly have to be something in the form of the book, or it must have something printed or written thereon, indicating to the public that it contained the by-laws of the company, and was "posted," "subject to public inspection."

The words "to post" or "posted," referring to the giving of notice to the public, have by common usage acquired a particular and definite meaning. It means "to attach to, or be placed upon a wall or post, a bulletin board or some other convenient object," so that the contents thereof will be displayed to the public. Under the undisputed evidence in this case, the by-laws were not posted in appellant's principal place of busi-

ness, as required by Section 1624. We have noted the changes in the statute suggested by appellant, but we see nothing in these changes that in any way alters the requirements for posting, or that is intended to relieve the company of any part of its original duty.

But it is further insisted by appellant that the intervener had actual notice of the company's by-laws, and that such notice is conclusive upon it. The evidence relied upon to establish this claim is the rebuttal testimony of Charles Teale, from which it appears that the defendant in 1915 signed a note in the name of appellant, to the intervener bank. The witness notified the bank that, in signing this note, defendant acted without authority, and that appellant would not be responsible for any subsequent note signed by him, and that, in connection with this controversy, the witness sent the bank "a copy of the by-laws in regard to that. At that time I sent them a copy of the by-laws concerning this feature." The cashier of the intervener bank denied, on cross-examination, that he ever received a copy of any portion of appellant's by-laws, or that he knew what they contained, until July, 1921, which was after this action was begun. The witness Teale did not claim that he sent intervener a copy of the by-laws as a whole, but specifically limited his testimony to the by-law concerning the subject of the controversy, which placed exclusive authority in the treasurer of the corporation to sign its notes. Actual knowledge of one provision of the by-laws which bore no relation to Article II, Section 4, quoted above, is not sufficient to give constructive notice to the bank of the above provision thereof. This must be obvious.

Appellant also places reliance upon the portion of Section 1626 quoted supra, and upon the decisions of this court in *Fort Madison Lbr. Co. v. Batavian Bank,* 71 Iowa 270; *Ottumwa Screen Co. v. Stodghill,* 103 Iowa 437; *Perkins v. Lyons,* 111 Iowa 192; and other cases. Stating the provisions of Section 1626 affirmatively, a transfer of shares of stock is valid between the parties thereto before the same is regularly entered upon the books of the corporation. Negatively and precisely, the statute is as follows:

"The transfer of shares is not valid, except as between the

parties thereto, until regularly entered upon the books of the company, showing the name of the person by and to whom transferred, the numbers or other designation of the shares, and the date of the transfer; * * *"

The stock was not purchased by intervener, but was transferred to it as collateral security for the note of the defendant. Section 1626 further provides that the transferee of stock who

3. CORPORATIONS: shares: transfer as collateral: timely notice.

holds it as collateral security for the debt of the transferor may notify the secretary of the corporation in writing thereof, and, from the time of such notice, the stock "shall be considered in law as transferred on the books of the corporation which issued said stock, without any actual transfer on the books of such corporation of such stock."

A notice complying with this provision of Section 1626 was given the secretary of appellant by the cashier of the intervener bank, shortly after this action was commenced. It is urged that this notice was not timely. The statute does not fix a time when the notice must be given, and in any event, so far as the evidence shows, the delay was without prejudice to appellant. Neither the situation nor the relation of the parties was in any manner changed in the meantime.

All of the cases cited involved the claims of attaching creditors, as to whom the transfer of shares of stock is held to be invalid until such transfer has been regularly entered upon the books of the corporation. The distinction between the case at bar and the cases cited by appellant is quite apparent. In the case before us, the transfer of the stock which was to be used as collateral was valid between the parties, without being transferred upon the books of the corporation; whereas the transfers involved in the cited cases were invalid because the lien asserted attached before the transfer was actually entered upon the books of the company, and at a time when it was invalid as against such third parties. Neither Section 1626 nor the cases cited aid appellant.

What we have said is decisive of the case, and further dis-

cussion is unnecessary.   The judgment and decree of the court below is—*Affirmed.*

All the justices concur.