388

DEPARTMENT OF TRADE AND COMMERCE OF THE STATE OF NEBRASKA, APPELLANT AND CROSS-APPELLEE, v. BANKERS AUTOMOBILE INSURANCE COMPANY, CROSS-APPELLEE: GEORGE M. CHRISTIAN ET AL., INTERVENERS AND CLAIMANTS, APPELLEES AND CROSS-APPELLANTS.

FILED JULY 6, 1928. No. 26274.

*Marcus L. Poteet* and *Hall, Cline & Williams,* for appellant.

*C. M. Skiles, A. S. Johnston, Allen & Requartte, Charles E. Matson* and *Foster & Anderson, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON, EBERLY and HOWELL, JJ., and REDICK, District Judge.

EBERLY, J.

Upon petition of the department of trade and commerce a receiver was appointed by the district court for Lancaster county, Nebraska, for the Bankers Automobile Insurance Company, a Nebraska corporation, and thereafter on April 10, 1921, an order was made liquidating that company. A controversy arising as to who was entitled to liquidating dividends on certificates of stock No. 1 for 480 shares and No. 5 for 320 shares of the capital stock issued by the insurance company to one Charles Maixner, issues were framed and a trial had.

So far as concerns the parties now active in the litigation before this court, and as to questions now being insisted upon, it may be said that the district court for Lancaster county, Nebraska, found in favor of (1) American State Bank; (2) George M. Christian and Charles A. Herman; (3) E. G. Maggi; with "right of priority in order named," and found generally against all other claimants, including the receiver of the Bankers Automobile Insurance Company. From this the last named appeals, and the defendants Christian and Herman have also filed a cross-appeal.

The evidence in the record supports the finding of fact of the district court which, for the purpose of this case, may be summarized briefly as follows: That Charles Maixner on or about October 1, 1917, being the owner of 800 shares of stock in the Bankers Automobile Insurance Company, represented by the certificates last referred to, secured a loan from the American State Bank;

as part of that transaction he executed and delivered to that bank his promissory note in the sum of $20,000, and also as collateral security therefor assigned, delivered and pledged the 800 shares of stock, then and there expressly stipulating, by the terms of the note executed, that such stock should be held by that bank "as collateral security to any indebtedness that he then or thereafter might owe the American State Bank while the stock was held by it as collateral;" that of this indebtedness thus secured there remained unpaid to the receiver of the American State Bank, at the time of trial herein, the sum of $9,365.61.

It is fairly established by the evidence that the entire proceeds of this loan thus made to Maixner, entered into, was represented by and formed the sole consideration of two certificates of deposit, aggregating $20,000, on that day issued by the American State Bank. While the record before us does not disclose the payee named in these certificates, yet the inference is amply sustained that, substantially contemporaneous with their issuance, they were delivered to the Bankers Automobile Insurance Company either as the payee named therein or as indorsee of Maixner and were received by it in substitution of other assets previously owned and held by that company. The assets thus taken out of the treasury of the insurance company had been received by it from Maixner, and at the time of their return to him may be inferred to have been of very doubtful value, and probably of no value whatsoever.

At the time of this transaction it is to be remembered that Dwiggins, who was the sole person to act for, and in behalf of, the bank in making the loan, and who was then a director, its president, and the managing officer, was also a director of the insurance company, and the owner of 20 shares of its capital stock. The result of the transaction, considered as an entirety, was to increase the value of all the stock of the insurance company, including the 20 shares of stock then owned by Dwiggins to the extent of the loan. It was, therefore, a transaction which

operated unquestionably for Dwiggins' private benefit as well as for the benefit of the insurance company.

It may be said in passing that the record sustains the conclusion that the relations between Maixner and Dwiggins at this time was of a close and confidential nature; that Dwiggins personally transacted all business between his bank and the former.

The record also discloses that on December 22, 1920, as security for a loan from the defendants George M. Christian and Charles A. Herman to said Charles Maixner, the latter assigned in writing any "equity which he might have in the stock referred to as collateral security for the amount of such loan." A similar assignment was made to E. G. Maggi subject to the rights of the American State Bank and Christian and Herman.

While the right to recover at all is challenged, there is no complaint as to the amounts adjudged due to the respective parties above named save and except as to the allowance of interest. The receiver of the Bankers Automobile Insurance Company insists that he is entitled to the liquidating dividends, and that his rights are prior to the prevailing parties in the district court because of the fact that the by-laws, alleged to have been adopted by the board of directors of the Bankers Automoboile Insurance Company, contain a provision as follows: "The company reserves a first and paramount lien upon the shares of stock and the certificates representing the same to secure the payment of any debt or obligation of the owner thereof in tort or in express or implied contract, to the company."

The claim of the receiver of the insurance company is based wholly upon the alleged fact that Dwiggins had actual knowledge of the adoption of a by-law by the insurance company at the time of the first meeting of its board of directors on August 10, 1917, reserving a first and paramount lien on all the stock of the insurance company to secure the payment of any debt or obligation of the owner thereof in tort or in express contract, and that,

therefore, his knowledge was imputable to his bank at the time the loan was first made and that institution parted with its money. The only evidence in the record tending to sustain this contention is a copy of the minutes of the first meeting of the board of directors. Dwiggins was, according to the secretary's minutes, one of the ten directors-elect present. At this meeting the officers of the insurance company were elected; its articles of incorporation were amended; arrangements were made and entered into for the sale of $250,000 worth of its common and preferred stock, and one of the items of business transacted is referred to in the record as "Mr. Charles Maixner moved the adoption of the following by-laws for the Bankers Automobile Insurance Company," which included more than seven typewritten pages. This motion was seconded by Mr. Kenyon and unanimously adopted.

The record does not, however, disclose that the by-laws adopted were at any time read to, or in the presence of, the assembled directors. There is no affirmative evidence in the record save and except that Dwiggins was present at the meeting during which he voted for the Maixner motion to adopt the by-laws.

It may be said in passing that the by-law quoted and which is the foundation of appellant's contention was not "posted" as required by section 469, Comp. St. 1922. It appears that this section was adopted from Iowa by the territorial legislature of 1866, and since that date has remained on the statutes of both states unmodified. While it has not as yet been construed by this court, it has been repeatedly before the supreme court of Iowa. The rule announced and adhered to by that tribunal is: "Constructive notice of the provisions of the by-laws will be imputed to third parties only if a copy thereof is posted in the principal place of business of the corporation, so as to be subject to public inspection; and, unless the statute is complied with in respect to posting, a stranger will not be bound thereby." *Iowa-Missouri Grain Co. v. Powers*, 198 Ia. 208.

It is obvious, therefore, that the by-law relied upon by the appellant can be given no force and effect in this proceeding in the absence of actual notice to the American State Bank.

The insurance company, however, insists that knowledge of the existence of the terms of its by-law "reserving a lien" is imputable to the bank because Dwiggins, as president and director, represented the bank in the making of the original loan of $20,000 on October 1, 1917; that the same Dwiggins, as a stockholder of the insurance company, was present at the organization meeting of that corporation that convened August 10, 1917, at 11 a. m., and was at that time elected a director; that by Dwiggins as such director, in company with the nine other directors then elected, a set of by-laws containing the provision reserving a lien upon stock was duly adopted; that, therefore, what Dwiggins knew as a director of the insurance company on August 10, 1917, he must be deemed to know, as president of the bank and director on October 1 following, when he made the original loan and accepted the stock as collateral security thereto.

This court has long declared the rule that—"It is the duty of an agent to make known to his principal all facts concerning the service in which he is engaged that come to his knowledge in course of his employment, and this duty he is, in a subsequent action between his principal and a third person, conclusively presumed to have performed." *Modern Woodmen of America v. Colman,* 68 Neb. 660. See, also, *Pringle v. Modern Woodmen of America,* 76 Neb. 384.

It is to be noted, however, in the present case, that whatever information Dwiggins actually acquired at the organization meeting of the insurance company was not acquired by him in the course of his employment as a bank officer, and was obtained in a transaction in which the bank at the time had no interest whatever.

The distinction involved in this case, in principle, is well stated in one of the old cases in another connection in the

following words: "Though notice to a man's counsel be notice to the party; yet where the counsel comes to have notice of the title in another affair, which it may be, he has forgot, when his client comes to advise with him in a case with other circumstances; that shall not be such a notice, as to bind the party." *Preston v. Tubbin,* 1 Vern. (Eng.) 286.

It is obvious that to hold a principal chargeable in a present transaction with what his agent may have casually read or heard a half century prior thereto, when he was not acting in behalf of such principal or engaged in a transaction in which such principal had any interest whatever and which may have been by him wholly forgotten, would not only be unjust but would amount to a manifest absurdity. On the other hand, cases could well be imagined where the nature of the facts were such that the prior transaction would be indelibly impressed on the mind of such agent, and such knowledge in a present transaction should be justly chargeable to his present principal.

Without an extended discussion of the authorities or the reasoning upon which they are based, it may be said that the controlling rule, applicable to the facts above suggested, appears to be: "A principal is only chargeable with notice communicated to or knowledge acquired by his agent in another transaction at another time and when he was acting for another principal, when clear proof is made that the knowledge or notice was present in the mind of the agent at the time of the transaction in question." *Constant v. University of Rochester,* 111 N. Y. 604. See, also, *Distilled Spirits,* 11 Wall. 356; 3 Thompson, Corporations (3d ed.) sec. 1763; 4 Fletcher, Cyclopedia Corporations, secs. 2221, 2222; 2 Mechem, Agency (2d ed.) sec. 1809.

The question, therefore, in its essentials, is not what the man who is now acting as an agent formerly heard or saw, but what he now actually remembers. Concededly, the facts involved and to which his knowledge relates may be of such a nature as to necessitate as a presumption of fact that they were remembered when the subsequent

transaction in which he officiated as agent occurred. Such, indeed, was the case in *Henry v. Omaha Packing Co.*, 81 Neb. 237.

But the facts disclosed by the record in the present case are not of such a character. Here, from nothing shown but attendance at a corporate meeting, it is sought to impute actual knowledge at a subsequent time of a single provision of a corporate by-law there adopted. No reading of these by-laws of which this provision formed a part by, to, or in the presence of, Dwiggins either prior to, at the time of, or after their adoption, is disclosed. No evidence appears of any discussion of their provisions. A mass of business transactions and details transacted at the same meeting, pertaining to the commencement of the business for which the insurance company was organized, is shown by the secretary's record, covering 12 typewritten pages.

Considering the record as an entirety, we cannot judicially say that it establishes as a fact that knowledge of the provisions of the by-law pertaining to the reservation of a lien on stock was in Dwiggins' mind at the time he first made the loan which forms the foundation of this litigation. Indeed, it may be said that no business man, acting with good faith, exercising reasonable care, with such knowledge in his mind, would have carried out the transaction of making the original loan by the bank in the manner presented by this record. Under the circumstances established it could have occurred in the manner disclosed by the record only if actual knowledge of the existence of the by-law in question was wholly absent from the mind of the representative of the bank.

In this connection it is also to be remembered that the well established rule is, that the burden of proof to show that an agent, in a transaction for his principal, had in mind knowledge gained by him on a former occasion and in a different transaction, is upon the party who seeks to charge the principal with notice by reason of such knowl-

edge. *Constant v. University of Rochester*, 111 N. Y. 604, 2 L. R. A. 734.

The form of the issues in the present case imposes this burden upon appellant, and this he has failed to sustain. It follows that the rights of the bank, at the time of making the loan, were in no manner affected by the provisions of the by-law hereinbefore quoted.

Neither can we sustain the contention that the rights of the bank, under the facts in this record, were subsequently impaired by failure to give notice of the pledge to the insurance company.

At the annual election of the corporate officers following the 10th day of August, 1917, Dwiggins was not only selected director but, for the first time, was duly elected secretary of this institution. The pledged stock was then in his actual custody and control as the managing officer of the bank. It was daily before him; it was subject to regular examination by the board of directors; was checked, examined and reported on by them in the ordinary course of business of the bank. The facts of the transaction were not therefore a mere matter of doubtful memory or of knowledge casually acquired. As a presumption of fact, fairly deducible from the evidence, Dwiggins, when he became secretary of the insurance company, actually had the knowledge of the existence of the pledge of the stock as an individual which, transmitted to him in his capacity as secretary by the bank, would have fully conformed to the contentions of appellant. It would seem that his knowledge then in his mind would thus be imputable to the insurance company. This presents, however, a question unnecessary to determine in the present case.

It further appears that actual knowledge of the pledge of stock was given to the representative of the insurance company on December 13, 1922. There is neither statute nor by-law in the record which fixes the time or manner when notice of pledge of stock is required to be given, and in any event, so far as the evidence shows, the delay which actually occurred was without prejudice to the appellant.

There was no extension of credit by the insurance company to Maixner on the basis of the record ownership of the pledged stock. Neither the situation nor relation of the parties was in any manner changed in the meantime.

It follows that, under the circumstances thus narrated, no rights can be predicated by the insurance company on the failure to register the stock at the time of the pledge. *Iowa-Missouri Grain Co. v. Powers, supra.*

The trial court, in its decree, allowed interest on the dividends accumulated on the 800 shares of stock which had been withheld from those entitled thereto. This action is challenged. It would seem that the principle enunciated in *Armstrong v. American Exchange Nat. Bank,* 133 U. S. 433, and in *Chemical Nat. Bank v. Armstrong,* 59 Fed. 372, and 23 R. C. L. 104, sec. 115, is applicable to the present situation, and that no error was committed by the district court in its disposition of this question.

We have not overlooked the other questions presented and argued in the briefs of the parties in this case. It is thought that the determinations made in this opinion are decisive and controlling.

It follows, therefore, that the judgment of the district court is correct, and the same is     AFFIRMED.