[Civ. No. 6091. Third Appellate District.—June 8, 1939.]

CHAS. W. KRAMER, Respondent, v. JOHN L. SANGUI-NETTI et al., Appellants.

Virgil M. Airola for Appellants.

Joseph H. Huberty for Respondent.

THOMPSON, J.—A rehearing of this case was granted for the sole reason that the trial court failed to render judgment quieting title in the defendants to their separate placer mine to which the plaintiff claims no title. Defendants' title to his claim was an issue in the case and should have been determined. Assuming that such a modification of the judgment should be made by the trial court, we have concluded that the cause should be remanded for that purpose. Otherwise, the opinion previously rendered properly determines the issues, and it is therefore adopted as follows:

"The defendants have appealed from a judgment quieting title in plaintiff to a quartz mining claim in Calaveras County. The defendants assert title to a portion of plaintiff's claim by virtue of an overlapping placer mining claim which they subsequently located.

"It is contended the plaintiff's title to his quartz claim is invalid for lack of evidence of a sufficient discovery of quartz on the property and for failure to post notice of his location as required by Section 1426 of the Civil Code. A reversal of the judgment is also sought on the ground that the court failed to adopt findings upon the issues tendered by the cross-complaint.

"The record discloses the following facts: Prior to the year 1928, Frederick H. Rindge located twenty-two mining claims in Mill Valley Mining District, Calaveras County, including the Buckhorn Lode Mining Claim to which title was quieted in the plaintiff in this action. Rindge forfeited his title to the claims by his failure to perform the statutory assessment work thereon from 1930 to 1935 inclusive. February 15, 1935, Harda Thelma Kramer relocated the Buckhorn Lode Mining Claim pursuant to the provisions of Section 1426 of the Civil Code by discovering thereon quartz rock in place and by posting notice of her location as required by the last-mentioned section. A few days later she conveyed the Buckhorn claim to the plaintiff, Charles W. Kramer, who thereafter performed the assessment work and became and now is the owner of said claim and entitled to the possession thereof.

"The procedure followed in the vesting of title to the Buckhorn claim in Charles W. Kramer is received in the case of *Kramer* v. *Gladding, McBean & Co.*, 30 Cal. App. (2d) 98 [85 Pac. (2d) 552], to which reference is made for a more

particular statement of facts. It is the same as the evidence adduced in this case, in that regard. It was there determined from facts similar to those which appear in this record, that Frederick H. Rindge forfeited his title to the Buckhorn claim for failure to perform assessment work, and that Harda Thelma Kramer thereafter located that claim in the manner required by law and then transferred it to Charles W. Kramer. It was also held in that case that it was not necessary to follow in detail the procedure specified in section 1426dc of the Civil Code to perfect a valid relocation of the Buckhorn claim since it was relocated prior to the adoption of that section, September 15, 1935. (Stats. 1935, p. 2260.)

"John L. Sanguinetti, one of the defendants in this suit, formerly worked on the Buckhorn claim for Frederick H. Rindge. He was personally present and assisted Mrs. Kramer in locating that claim in 1935. The corners of that claim conform exactly to those which were formerly staked by Mr. Rindge. The defendants knew all about Mrs. Kramer's relocation of that claim in 1935. John Sanguinetti was employed to assist her in doing so. Her claim was duly recorded as required by law in Calaveras county, February 15, 1935. September 26, 1935, the defendant, John L. Sanguinetti, recorded a notice of location of an adjoining placer mining claim called the Chaparral Placer Mining Claim, overlapping a small portion of the Buckhorn Lode Mining Claim. The defendants took and retained possession of their placer claim and asserted their title and right to the possession thereof, together with the Buckhorn claim.

"This suit to quiet title to the Buckhorn claim was commenced by the plaintiff December 5, 1935. The complaint is couched in two counts. The first one consists of a simple action to quiet title to the claim. The second count seeks to eject the defendants from wrongful possession of a portion of the Buckhorn claim. The defendants answered the complaint, denying the essential allegations thereof, and affirmatively asserting they are in lawful possession and entitled to that portion of the claim which conflicts with their own property. There is attached to the answer a cross-complaint in which it is alleged the defendants are the owners and entitled to the possession of the Chaparral Placer Mining Claim, particularly described therein, which overlaps a small portion of the Buckhorn claim. It is also alleged the plaintiff asserts some interest in the Chaparral claim. The prayer

then asks for a determination that plaintiff has no right, title or interest in or to the Chaparral claim, and that he take nothing by his action.

"The court adopted findings to the effect that all of the allegations of plaintiff's first and second causes of action are true; that plaintiff is the owner and entitled to the possession of the Buckhorn Lode Mining Claim described in the complaint, and that the defendants had no right, title or interest therein. Judgment was rendered accordingly.

"It is true the court failed to adopt specific findings upon the defendants' affirmative allegations contained in their cross-complaint with respect to their alleged ownership and right of possession of the Chaparral Placer Mining Claim.

"There is adequate evidence to support the findings and judgment that plaintiff is the owner and entitled to the possession of the Buckhorn Lode Mining Claim described in the complaint. Those findings and the decree necessarily imply that defendants are not the owners or entitled to the possession of any portion of their Chaparral claim which overlaps or conflicts with the description of the Buckhorn claim. Any further findings in that regard upon the issues presented by the cross-complaint would necessarily be adverse to the defendants.

"The evidence sufficiently supports the finding that Harda Thelma Kramer located the Buckhorn claim in February, 1935, by discovering thereon a 'vein or lode of quartz', bearing gold in sufficient quantity to warrant a prudent person in spending time and money in developing the claim. (Sec. 1426, Civ. Code; *Kramer* v. *Gladding, McBean & Co., supra;* 17 Cal. Jur. 354, sec. 48.) Mr. Wyllie, a graduate mining and civil engineer, who assisted her in locating the claim, testified in that regard:

" 'Q. Are those the original corners that you established in 1929? A. Yes. Q. What did you find at the point of discovery? A. It is just on the upper side of the road, there is about a ten foot tunnel running into the hill, and there is a showing of quartz vein in this tunnel. Q. Describe the quartz vein that you saw. A. There is a quartz vein in there that apparently has been tipped over. I can't say as to its dip, but there is a vein there approximately a foot wide, in this tunnel, of quartz and some vein material. . . . I would say that a man would be justified in looking further

into the Buckhorn to see whether it wouldn't develop into a paying mine or not.'

"Adam Kramer, husband of Harda Kramer, who is a practical miner with ten or twelve years of experience, testified regarding the presence of gold-bearing quartz on that claim at the time of the location, as follows:

" 'We went up to the Buckhorn (February 13, 1935) . . . Up there is a quartz ledge which has been dug back on the side of the bank. . . . We located the mine (there). . . . At the point of discovery on the Buckhorn there is a quartz vein which lies on about a fifteen per cent of a grade, about a foot thick in places and in some places not quite so thick, and right at the lower end in the tunnel, it dips, there is over a foot there with a solid ledge. Q. Have you had any assay made of that vein exposed at the point of discovery? A. I did . . . Q. Do you know whether or not the quartz vein at the point of discovery is gold bearing? A. It is. . . . I think that a paying mine could be developed there.'

"Mr. Coulter, the Calaveras county surveyor, also testified in that regard:

" 'I never examined the Buckhorn very closely until last Wednesday. . . . I found a quartz ledge on the Buckhorn . . . in a tunnel about five or six hundred feet from the south end of the line. . . . It is a quartz vein about ten inches or a foot thick.'

"Mrs. Kramer testified that the defendant, John Sanguinetti, was with them on February 13th, when they made the discovery and located the Buckhorn claim. At that time a written notice of location of the claim, signed by her, was enclosed in a tobacco can and placed on a small pyramid of rocks which they constructed near the entrance to the tunnel where the gold-bearing quartz was found. A copy of that notice was duly recorded as required by law.

"It is not necessary that gold, silver or other mineral-bearing quartz shall be discovered in sufficient quantity or value to assure the maintenance of a profitable mining enterprise. A valid location is authorized when the prospector discovers a genuine vein or lode on the claim which contains sufficient 'gold, silver, cinnabar, lead, tin, copper or other valuable deposit' of mineral to warrant a reasonably prudent person in expending his time and money to further develop the mine with a fair prospect of realizing a profit

thereby. (*Kramer* v. *Gladding, McBean & Co., supra; Stinchfield* v. *Gillis,* 96 Cal. 33, 37 [30 Pac. 839]; *Jupiter Min. Co.* v. *Bodie Cons. Min. Co.,* 11 Fed. 666, 675; *Book* v. *Justice Min. Co.,* 58 Fed. 106; *Stockton* v. *Santa Paula Oil Co.,* 64 Cal. App. 384 [221 Pac. 661]; 2 Lindley on Mines, 3d ed., p. 774, sec. 403; 17 Cal. Jur., p. 318, sec. 26; 18 R. C. L., p. 1121, sec. 32.)

"A statute specifying the requirements necessary for a valid location of a mining claim, as between conflicting claimants, should receive a liberal construction. (*Nevada Sierra Oil Co.* v. *Home Oil Co.,* 98 Fed. 673, 677.)

■ "Under the circumstances of this case, the defendants may not complain of an insufficient posting of the notice of location, by placing it in a tin can which was deposited on a pyramid of rocks constructed in the entrance to the tunnel near the point where the gold-bearing quartz was discovered. The defendant, John Sanguinetti, was employed to assist Harda Thelma Kramer to locate the mine. He had worked for the former owner of the mine and knew its exact location and what work had been performed in developing the mine. He was present and knew all about the discovery of the gold-bearing quartz in the tunnel, and that the notice was placed in the tin box and deposited on the pyramid of rocks as a formal notice of location of that particular claim. He may therefore not complain that the notice was not actually posted in a conspicuous place within clear view at the point of discovery. In the case of *Donahue* v. *Meister,* 88 Cal. 121 [25 Pac. 1096, 22 Am. St. Rep. 283], it was held that a notice of location of a mine written on a sheet of paper which was folded and placed on a mound of rocks three feet in height constructed on the lode line and nearly concealed by another rock which covered the notice was a sufficient compliance with the law which required it *to be posted* 'in a conspicuous place upon the claim located at or near the lode line of said claim'. In the case of *Gird* v. *California Oil Co.,* 60 Fed. 531, 543, it was held that the depositing of a notice of location of a mine in a tin box which was placed on a mound of rocks near the point of discovery, under circumstances almost exactly like those in the present case, constituted a sufficient compliance with the law. In 1 Lindley on Mines, second edition, page 642, section 356, it is said:

" 'An artificial mound of rocks on the line of a lode is a conspicuous object which would naturally attract the at-

tention of one seeking information as to a former location of a lode, and the slightest examination of the mound would result in the discovery of a written notice.'

"It is true that section 1426 of the Civil Code requires as one of the necessary preliminaries to locating a mining claim the *'posting* [of] a notice of such location, at the point of discovery'. The posting of notice is ordinarily for the purpose of conveying to the public the information contained therein. It has been said the term 'posting a notice' means that the written information shall be placed 'upon a wall, or post, or bulletin board, *or some other convenient object'* so that its contents may be displayed to the public. (*Iowa Missouri Grain Co.* v. *Powers,* 198 Iowa, 208 [196 N. W. 979, 33 A. L. R. 1268].) We are of the opinion a notice of location containing the information specified in section 1426 of the Civil Code, which is attached to and displayed on an artificially constructed pyramid of rocks at the point of discovery sufficiently complies with the requirement with respect to posting the notice. The statute requiring a location notice to be given should receive a liberal construction with respect to the location thereof as well as to its contents. (*Stock* v. *Plunkett,* 181 Cal. 193, 197 [183 Pac. 657] ; *Donahue* v. *Meister,* 88 Cal. 121 [25 Pac. 1096, 22 Am. St. Rep. 283] ; *Allen* v. *Laudahn,* 59 Idaho, 207 [81 Pac. (2d) 734, 739] ; *Yosemite Gold Min. Co.* v. *Emerson,* 208 U. S. 25 [28 Sup. Ct. 196, 52 L. Ed. 374].) In 40 Corpus Juris, page 795, section 199, it is said:

" 'As a general rule a substantial compliance in good faith with the requirements of the statute or regulation in the matter of posting notice is required and is sufficient, *particularly as against one who has actual knowledge of the prior location.'*

"It is not necessary to determine in this case whether such a notice of location enclosed in a tin can and thereby concealed from view, even though the can be placed on an artificially constructed pile of rocks at the point of discovery, would be a sufficient compliance with the law, for the reason that the defendants had personal knowledge of the prior location of Mrs. Kramer, and the actual placing of the notice thereof in the tin can. John Sanguinetti actually assisted her in locating the claim. He was personally present when the notice was placed in the can and deposited on the pyramid of rocks. If he did not know exactly what the notice con-

tained, he knew where to find it and how to further inform himself regarding its contents. The manner of posting the notice was therefore adequate as between the locator of the Buckhorn claim and the defendants.

■ "It was not necessary for the court to adopt findings on the issues tendered by the cross-complaint for the reason that they were necessarily included in the issues presented by the complaint and the answer which were fully determined by the court. (*Sormano* v. *Wood,* 179 Cal. 102 [175 Pac. 451] ; *Brooks* v. *White,* 22 Cal. App. 719 [136 Pac. 500] ; 22 Cal. Jur. 162, sec. 37.) The complaint alleges that the plaintiff is the owner and entitled to the possession of a specifically described quartz mining claim. The answer denies those allegations and affirmatively asserts that the defendants are entitled to the possession of that property. The cross-complaint reiterates the affirmative allegations of the answer in that regard. It describes twenty acres of land which it is alleged belongs to the defendants. The defendants claimed that a portion of the land described in their cross-complaint overlaps a part of the mining claim to which the plaintiff asserts title. The real issue was whether plaintiff or defendants own that portion of the mining claim described in the complaint which is overlapped by a part of the defendant's property which is described in the cross-complaint. The court specifically found all of the allegations of the complaint to be true. The court further found that the plaintiff is the owner and entitled to possession of all of the mining claim which is described in the complaint, and that defendants had no right, title or interest in any portion of the property described in the complaint. A judgment was rendered accordingly. This disposes of every essential issue in the suit to quiet title to that particular mining claim. No other property was necessarily involved therein. The plaintiff claims no title to any portion of defendants' land beyond the specifically described boundaries of his own mining claim. The judgment of the court merely quiets title in plaintiff to the mining claim described in the complaint.

"Since the court specifically found that the plaintiff is the owner and entitled to possession of the entire mining claim described in the complaint, it is evident that further findings upon the issues raised by the cross-complaint would necessarily be adverse to the defendants. A multitude of authorities have determined that an appellant is not prejudiced

by a failure to find upon issues which, in support of the judgment, would necessarily be adverse to him. (*Phillips* v. *Stark,* 65 Cal. App. 136 [223 Pac. 443]; *Reiniger* v. *Hassell,* 216 Cal. 209 [13 Pac. (2d) 737]; 24 Cal. Jur. 944, sec. 188; 10 Cal. Jur. Ten-year Supp., p. 741.)

"However, to save the question of the failure of the court to adopt specific findings based on the cross-complaint regarding the affirmative allegations of defendants' asserted title and right of possession to their Chaparral Placer Mining Claim as against the plaintiff, this court hereby adopts the further finding under the authorities of article VI, section 4¾ of the California Constitution, section 956a of the Code of Civil Procedure, and *Tupman* v. *Haberkern,* 208 Cal. 256, 268 [280 Pac. 970], that:

" 'Defendants are the owners and entitled to the possession of all that portion of their Chaparral Placer Mining Claim in Calaveras County, California, described in the cross-complaint which does not overlap or conflict with the description of plaintiff's Buckhorn Lode Mining Claim, as it is described in the complaint.' "

The judgment is reversed and the court is directed to render judgment in accordance with the foregoing opinion, quieting title in plaintiff to his Buckhorn Lode Mining Claim described in the complaint, and further quieting title in defendants to all of that portion of their Chaparral Placer Mining Claim described in the cross-complaint which does not overlap or conflict with plaintiff's claim. The plaintiff may recover his costs on appeal.

Tuttle, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 7, 1939, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 7, 1939.