[Civ. No. 20419.   Second Dist., Div. One.   Apr. 25, 1955.]

BONNIE M. FIFIELD et al., Appellants, v. ROSS GREELEY, as Executor, etc., et al., Defendants; GRACE M. TAYLOR, Respondent.

Kenneth D. Holland for Appellants.

Harvey, Rimel & Johnston and A. P. G. Steffes for Respondent.

WHITE, P. J.—This is an action for declaratory relief whereby plaintiffs seek a declaration of the legal effect of certain joint tenancy deeds. The complaint contains two causes of action, each relating to separate parcels of real property, the allegations of both causes of action are substantially similar as are the answers of the respective defendants.

Plaintiffs Bonnie M. Fifield and Frances Irene Coffin with defendant Grace M. Taylor are the daughters and sole heirs-at-law of Vena J. Scott who died December 24, 1951. At that time decedent Vena J. Scott and defendant Grace M. Taylor were the record owners as joint tenants, of two parcels of real property, one in Los Angeles County (hereinafter referred to as the "Gardner Street property"), and the other in Orange County (hereinafter referred to as the "Balboa Beach property").

The Gardner Street property is the subject matter of plaintiffs' first cause of action, while the Balboa Beach property constitutes the subject matter of the second cause of action.

As to the first cause of action, it was alleged that an actual controversy exists between plaintiffs and defendant Grace M. Taylor with respect to the following:

1. Whether or not said deed is invalid because of the grantor's mental infirmity or because of any undue influence brought to bear upon the grantor by defendant Grace M. Taylor.

2. Whether or not the grantor intended by said conveyance to create a tenancy in common with the said defendant Grace M. Taylor.

At the trial of the action plaintiffs based their claims that the deed conveying title to the Gardner Street property was invalid as a joint tenancy deed, on three grounds:

First: That defendant Grace M. Taylor had exerted *undue influence* on her mother, Vena J. Scott;

Secondly: That Vena J. Scott was of *unsound mind* at the time she executed said deed; and

Thirdly: That "Vena J. Scott erroneously believed and understood that said deed would have the effect of vesting title to said real property in herself and Grace M. Taylor as *tenants in common,* rather than as *joint tenants* . . ." (Emphasis added.)

The foregoing allegations also formed the gravamen of plaintiffs' second cause of action concerning the Balboa Beach property.

The trial court found adversely to plaintiffs on all three theories as to both causes of action. However, on this appeal we are confronted with only one theory and but one cause of action for the following reason:

In the appellants' opening brief we find this concession:

". . . On the state of the record, Grace having acquired her interest in the Balboa property by purchase and not by gift, the legal principles hereafter expounded do not apply and Appellants therefore abandon their appeal as to Count 2 of the Complaint.

"Likewise, Appellants concede that the court having found adversely to them on the issues of unsound mind and undue influence, on the evidence they are bound by those findings."

Therefore, the single remaining issue presented to us is the correctness of the trial court's determination (contrary to appellants' contention) that Vena J. Scott, in executing the joint tenancy deed to the Gardner Street property, intended to create a joint tenancy and not a tenancy in common.

The trial court found as follows:

## "II

"At the time of the execution and delivery of said deed, Vena J. Scott acted freely and voluntarily, and the defendant Grace M. Taylor did not exercise any undue influence whatsoever on the said Vena J. Scott either before or at the time said deed was executed and delivered by the said Vena J. Scott. That said Grace M. Taylor was not the confidential and fiduciary agent of the said Vena J. Scott at the time of the execution of said deed. Defendant Grace M. Taylor did

not violate or betray any trust or confidence which the said Vena J. Scott reposed or may have reposed in her, and the execution and delivery of said deed by Vena J. Scott was her own free and voluntary act, and reflected her true will, desire and intent.

## "III

"At the time of the execution and delivery of said deed, Vena J. Scott was not mentally impaired, but she had full and complete possession of all her mental faculties and understood the nature and consequences of her acts in executing and delivering said deed. Vena J. Scott did not believe or understand, either before or at the time of executing and delivering said deed, that said deed would have the effect of vesting title to said real property in herself and defendant Grace M. Taylor as tenants in common or that she would have the right to dispose of her undivided one-half interest, or any interest therein by will; but the said Vena J. Scott understood and believed at all times that the execution and delivery of said deed would have the effect of vesting title to said real property in herself and defendant Grace M. Taylor as joint-tenants, with the right of survivorship, and that upon the death of one joint-tenant, the surviving joint-tenant would be the sole owner of said real property in fee."

The rules governing an appellate tribunal in the determination of an appeal such as the one now before us are thus succinctly stated in the case of *Berniker* v. *Berniker,* 30 Cal. 2d 439, 444 [182 P.2d 557]:

"As has so frequently been said, it is the general rule that on appeal an appellate court (1) will view the evidence in the light most favorable to the respondent; (2) will not weigh the evidence; (3) will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact; and (4) will not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof. (Citing cases.) It is not the province of the reviewing court to analyze conflicts in the evidence. (*Berger* v. *Steiner,* 72 Cal.App.2d 208, 213 [164 P.2d 559].) Rather, when a finding of fact is attacked as being unsupported, the power of the appellate courts begins and ends with a determination as to whether there is any substantial evidence contradicted or uncontradicted, which will uphold the disputed finding. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].)"

With the foregoing rules in mind we proceed to a review of the evidence. The record reflects that Vena J. Scott, a widow, aged 69 years, died December 24, 1951, leaving as her survivors and only heirs-at-law three daughters, appellants Bonnie M. Fifield, and Frances Irene Coffin, and respondent Grace M. Taylor. Defendant Ross Greeley was named and qualified as executor of decedent's estate. On June 1, 1950, Mrs. Scott was the sole owner of a dwelling house on North Gardner Street in the city of Los Angeles (the property involved in this appeal). On that day she executed a deed to said property as grantor to herself and Grace M. Taylor as joint tenants. This was a deed of gift wholly without any cash consideration. This property had been purchased by Mrs. Scott in 1934 and placed in the name of appellant Bonnie M. Fifield. In 1939 Bonnie deeded the property back to her mother. Sometime later Mrs. Scott took this unrecorded deed to O. L. Montgomery, a notary public, who added to the deed at Mrs. Scott's request the following words after the name of the grantee: "and Grace M. Taylor, a married woman, mother and daughter, as joint tenants." The notary initialed this alteration and the deed was recorded in October, 1944. Thereafter, on May 21, 1948, Grace executed a grant deed to the property to her mother. Grace testified that this deed and the one of June 1, 1950, were executed to correct any possible invalidity in the 1939 deed because of the alteration.

There was testimony that Grace and her husband, Robert, had lived in this home from about 1942. Mrs. Scott lived with the Taylors part of that time but for three or four years before her death she lived in her Balboa cottage. Bonnie testified that in 1939, when contemplating major surgery, she had a conversation with her mother with respect to her (Bonnie's) property, which she held in joint tenancy with her husband. She asked her mother if she could make a will leaving her half of her property to her son. Her mother advised her that half the property was hers and that she could make such a will. This witness also testified that in 1945 or early in 1946, when her mother was convalescing from a stroke of paralysis, she had a further conversation with the latter wherein her mother stated that as soon as she was able to get around she was going to make a will; that she wanted to leave everything divided equally between the girls but that she could not as some of the property was "tied up"; that she would have to leave the Gardner Street home to Grace

but that she would leave her (Bonnie's) name on it to protect Grace so she couldn't sell it, otherwise she, Grace, and her husband would run through the money; that she was sorry she had put Grace's name on the deed but she would remedy it in a will as best she could.

Subsequently, on December 7, 1950, Mrs. Scott executed a will which was admitted to probate. She used a printed form commonly sold in stationery stores, filling in the blank spaces in her own handwriting. As to the Gardner Street property here in question, the will contains the following provision:

"SECONDLY: The property at 1421 No. Gardner St., Hollywood 46, Calif. is in joint tenancy with myself Vena J. Scott and Grace M. Taylor the deed must never be changed out of her name and at her death my half will go to Bonnie M. Fifield 7717 Hampton Ave., Hollywood 46, Calif. and Francis Irene Coffin." Appellants do not contend that Mrs. Scott's will had any effect whatsoever on the legal effect of the joint tenancy deed. They concede that a person could not revoke right of survivorship by will. Appellants however argue that the will has evidentiary value going to the understanding of the testatrix as to the legal effect of joint tenancy and of her intent. That, even though invalid as regards the joint tenancy, the will is indicative of the understanding and intent of the maker thereof. To this contention we shall later give consideration.

Evidencing support for the findings of the trial court we find in the record testimony that in December, 1942, Grace had a conversation with her mother concerning the execution by the former of the joint tenancy deed to herself and her mother as joint tenants. As to this conversation Grace testified:

"Q. At that time did you have a discussion with your mother as to what would happen to the property in the event either one of you would die? A. Yes. Mother told me that she would like to have that property put over in joint tenancy so that if anything should happen while I was away to either one of us, that the property would go to the other, to the other one."

With reference to the aforesaid addition of her name as a grantee in the deed Grace testified as follows:

"The Witness: I would like to just explain in my own words that my husband was going into service, and I wanted to go follow him around as much as I could and be with him,

and before I left my mother told me that she had spoken to the real estate agent at the corner and he——

"Q. By Mr. Holland (Attorney for plaintiffs) : Is that Mr. Montgomery?  A. Mr. Montgomery.

"Mr. Steffes (Attorney for defendants) : Who is also the notary public.

"The Witness: And he said he had put my name on the deed.  My mother said she had had my name put on the deed.

"Q. By Mr. Holland: And then did you see it after it was put on?  A. Yes, I did.  I saw it afterwards.

"Q. Do you recall when it was recorded?  A. I believe it was in 1944 before it was recorded.

"The Court: Well, do you know whether your name was on that deed before it was recorded?

"The Witness: Yes, it was on before it was recorded.

"Q. By Mr. Holland: Do you know who had possession of this deed from the date it was executed in 1939 up until the time it was recorded in 1944?  A. Well, I believe my mother had possession of it."

In answer to a question by counsel for appellants, Grace identified the deed dated June 1, 1950, as the instrument which she said her mother was going to make and that the subject of executing this deed came about as follows:

"A. Mother was staying down at the beach in Balboa, and my husband and I were down there, too, for Memorial Day.

"Mother told us she wanted to come back up home with us because she had some business to take care of.  When we got her home, just a day or so afterwards, she asked me to go to Mr. Montgomery's office so that she could have these joint tenancy papers made out properly.

"Q. Did she ask you to go with her?  A. Yes, indeed she did.

"Q. Did she execute this deed in your presence?  A. Yes, sir.

"Q. Do you recall the conversation you had, if any, with Mr. Montgomery at the time?  A. I don't recall the exact conversation, except that just the conversation about having it made out properly and legally."

Grace had a later conversation with her mother concerning the latter's reason for putting the Gardner Street property in joint tenancy, as shown by the following testimony by Grace:

"Q. . . . . Now, with reference to the other property which your mother deeded later to the two of you in joint tenancy, at that particular time did you have any discussion with your

mother about holding that property and what would happen to it in the event of the death of either of you? A. Yes.

"Q. Where did that conversation take place? A. That was in the Gardner house just a week or so later.

"Q. I see. What was said at that time by your mother? A. Mother said she had put my name on the Gardner Street property because since I was going away, clear across the country and everything, that *if anything happened to me she would get the property, or vice versa. It would be in joint tenancy.*

.   .   .   .   .   .   .   .   .   .   .   .

"Q. With reference to Plaintiffs' Exhibit 1, which is this deed of June 1, 1950, at that time did you have a discussion with your mother about the execution of that deed, and what would happen if one of you died? A. Well, mother told me at that time that she wanted this paper made out correctly and legally.

.   .   .   .   .   .   .   .   .   .   .   .

"Q. Was there any discussion about the possible death of one or the other of you? A. Well, only that she said she wanted it made out correctly and legally *so that if anything happened to any one of us, the property would go to the other.*" (Emphasis added.)

Mr. Montgomery, the notary public, who inserted in the deed before recordation the words, "and Grace M. Taylor, a married woman, mother and daughter, as joint tenants" testified:

"Q. Mr. Montgomery, when this language was added to Plaintiffs' Exhibit 3, which you initialed as the notary public, Mrs. Scott did tell you at that time that she did want the property to be vested in herself and her daughter Grace Taylor as joint tenants, did she not? A. Well, she would have to or I wouldn't have put it here. I can't—I don't know. I wouldn't have done it voluntarily, of course. I know that."

"Although respondent Grace M. Taylor did not actually pay any money to her mother for placing the Gardner Street property in joint tenancy, she and her husband "paid all utilities on the place and all the upkeep of the property, plus adding a great many new things." They also did considerable improvement work such as painting, roofing, patios and carpeting. They also paid the taxes on the property and purchased all the food for decedent Mrs. Scott and themselves while they resided there. Considerable evidence appears in the record that the mother reposed trust and confidence in her

daughter Grace, and there is no showing that the latter ever betrayed or violated her mother's faith and confidence in her.

We are satisfied that, viewed in the light of the rules hereinbefore enunciated, the record contains ample evidence of sufficient substantiality to support the foregoing findings to the effect that Vena J. Scott at all times believed and understood that the execution and delivery of the deed here in question did have the legal effect of vesting title to said real property in herself and her daughter Grace as joint tenants with the right of survivorship, and that such was Mrs. Scott's intention.

██ The principal and distinguishing incident of joint tenancy is the right of survivorship, and title by survivorship occurs only when propery is held in joint tenancy. ██ And the parties by their agreement cannot change this legal incident of joint tenancy without necessarily changing the nature of the estate (*McDonald* v. *Morley,* 15 Cal.2d 409, 412 [101 P.2d 690, 129 A.L.R. 810]). ██ That Mrs. Scott intended to create a joint tenancy is evidenced by her will wherein she used this language: "The property . . . is in joint tenancy with myself Vena J. Scott and Grace M. Taylor the deed must never be changed out of her name."

In the instant case survivorship was clearly declared in the conveyance, thereby evidencing an intention to create a joint tenancy in fee, and not a joint life estate with contingent remainder to the survivor and her heirs (*Hart* v. *Nagasawa,* 218 Cal. 685, 689 [24 P.2d 815]; *Estate of Davis,* 88 Cal. App.2d 704, 706 [199 P.2d 755]; 13 Cal.Jur.2d 292). And, the very form of the deed here in question created a presumption of intent to hold the property jointly (*Sandrini* v. *Ambrosetti,* 111 Cal.App.2d 439, 449 [244 P.2d 742]). The applicable rule is thus stated in *Edwards* v. *Deitrich,* 118 Cal.App.2d 254, 260 [257 P.2d 750]:

██ "That form of conveyance (joint tenancy) . . . itself raises the rebuttable presumption that the property is as described in the deed, and places the burden on the party claiming the property to be community to prove that fact. (Citing cases.)" And further, the record discloses, as pointed out by respondent, "Mrs. Scott was not a novice insofar as joint tenancies were concerned. Between the time in 1934, when according to appellant Bonnie M. Fifield, the two of them discussed purchasing the Gardner Street property together in joint tenancy, and December 7, 1950, when she showed her understanding of joint tenancies in her will, Mrs. Scott had on five different occasions been a party to deeds

conveying, or purporting to convey property in joint tenancy.''

The cases relied upon by appellants do not militate against what we have herein said. In *Tyler* v. *Larson,* 106 Cal.App.2d 317 [235 P.2d 39], the question of the sufficiency of the evidence to support the findings of fact made by the trial court was not involved. In the cited case the appeal was on the judgment roll, and the court was required to accept as true the facts found. In *Nunes* v. *De Faria,* 107 Cal.App. 2d 794 [238 P.2d 106], also cited by appellants, the judgment of the trial court was predicated upon a finding of fraud on the part of the party appealing and the facts of that case have no resemblance to those present in the case at bar.

With further reference to the execution of her will by Mrs. Scott some six months after execution of the joint tenancy deed here under attack, it might well be said, as pointed out by respondent, ''Suffice it to say, that if Mrs. Scott had desired or intended to destroy the joint tenancy estate in the property, she could have done so, at any time before her death, by executing and delivering an appropriate deed of her one-half of the property, creating a life estate in Grace, with remainder over to appellants. But her last will discloses a firm purpose to have title to the entire property remain in Grace after her own death.''

An examination of Mrs. Scott's will discloses that she did not attempt to will away her half of the property *at her own death* but that, at most, she attempted to do so in such manner that her will would take effect *at Grace's death* after the latter had enjoyed the ownership of the entire property during the remainder of her life by virtue of *her right of survivorship under the joint tenancy deed.* And, insofar as the claimed effect of the provisions of Mrs. Scott's will is concerned, the following language in *Edwards* v. *Deitrich, supra,* p. 262, is pertinent.

''The mere fact that one of the parties would like to will away more than her share, and the other party orally acquiesces, is not sufficient to convert the property from joint tenancy to community.''

For the foregoing reasons, the judgment is affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied May 23, 1955, and appellants' petition for a hearing by the Supreme Court was denied June 23, 1955.