[Civ. No. 6805. Fourth Dist. Aug. 6, 1962.]

WILBUR VEALE et al., Plaintiffs and Appellants, v. E. A. PIERCY et al., Defendants and Respondents.

Milton Wichner for Plaintiffs and Appellants.

Lonergan & Jordan and John B. Lonergan for Defendants and Respondents.

STONE, J.*—The mining claims involved in this action for declaratory relief are located upon government land in a rugged area of the San Bernardino Mountains in San Bernardino County. In 1955 plaintiffs-appellants bought "Sentinel," a lode mining claim, and in the same year filed several adjoining lode claims. In 1956 defendants-respondents filed a number of placer claims in the same general vicinity, several of which overlapped plaintiffs' prior lode claims. Plaintiffs filed an action for declaratory relief to determine title in the area of conflict. They alleged title and possession

---

*Assigned by Chairman of Judicial Council.

in themselves and, further, that defendants were trespassing on their claims. By way of answer, defendants denied plaintiffs' title, and alleged title and possession to be in themselves wherever the claims overlapped. Plaintiffs' title to the Sentinel claim is not challenged.

Defendants also filed a cross-complaint, seeking a declaration that they hold title to a road in section 7 leading to the claims which are located in section 18, which is contiguous to section 7. Plaintiffs answered the cross-complaint, alleging that the road is the only roadway to Sentinel; that the road had been used by the public continuously, openly and notoriously for more than five years prior to commencement of the action.

On the complaint, the court declared that plaintiffs had filed only one valid claim, and that otherwise defendants had paramount title where the two sets of claims conflicted. On the cross-complaint, the court declared the road leading to the claims to be a public roadway in both sections 7 and 18. Additional facts will be related as each of plaintiffs' contentions on appeal is discussed.

Plaintiffs confront us at the outset of this appeal with the contention that the trial court erred in denying their request for trial by jury. ▮▮▮ The California Constitution guarantees litigants the right to trial by jury as it existed at common law in 1850. (Cal. Const., art. I, § 7; Cal. Const. of 1849, art I, § 3; *People* v. *One 1941 Chevrolet Coupe,* 37 Cal.2d 283, 286 [231 P.2d 832]; *Ripling* v. *Superior Court,* 112 Cal.App. 2d 399, 402 [247 P.2d 117].) Whether the particular case meets the historical test must be determined from the issues raised by the pleadings and by the pretrial order.

▮ Plaintiffs point out, correctly, that they may not be denied a jury trial simply because their action is one for declaratory relief. The Supreme Court so stated in *State Farm etc. Ins. Co.* v. *Superior Court,* 47 Cal.2d 428 [304 P.2d 13], wherein the following language appears at page 432: "In short, the 'courts will not permit the declaratory action to be used as a device to circumvent the right to a jury trial in cases where such right would be guaranteed if the proceeding were coercive rather than declaratory in nature.' [Citations.]"

▮ Insofar as the right to a jury trial is concerned, it has been said erroneously that declaratory actions are equitable in nature. They are, in fact, *sui generis* and may raise either legal or equitable issues. (*Dills* v. *Delira Corp.,* 145

Cal.App.2d 124, 129 [302 P.2d 397].) The court in *Dills* made the following observation, at page 130, which in the light of the facts of this case we consider an understatement: "Determining whether an action is legal or equitable may be a fairsized task under ordinary circumstances (as in *Ripling* v. *Superior Court, supra,* 112 Cal.App.2d 399), but the problem is multiplied when the relief sought is a '*sui generis*' declaration in which event the court is even deprived of the advantage of considering the prayer as an indication of whether or not the claim is addressed to equity."

■ Turning now to the pleadings in the action before us, plaintiffs' complaint alleges as ultimate facts: that plaintiffs filed lode mining claims which antedated the filing of defendants' placer claims; that defendants' placer mining claims overlapped plaintiffs' prior lode claims; that plaintiffs are in possession of their lode claims; that defendants are trespassing upon plaintiffs' property by entering, excavating, blasting and working defendants' alleged placer mining claims. Plaintiffs prayed for relief as follows: "that the court resolve the foregoing controversy by adjudging and declaring that the defendants, or any of them, have no right to enter upon, over, excavate, blast, occupy or work their said alleged minings where the same conflict with the mining claims of plaintiffs."

Since plaintiffs pleaded possession in themselves at the time of filing the complaint, the action cannot be construed as one in ejectment. Further, plaintiffs pleaded none of the legal aspects of an action in trespass. Thus we have a simple quiet title action by plaintiffs in possession.

By way of answer, defendants denied plaintiffs' allegations and affirmatively pleaded a quiet title action; i.e., defendants' title to the placer claims which overlap plaintiffs' lode claims; possession of the property by defendants; that they worked the overlapping claims as a matter of right and were not trespassers; and that plaintiffs take nothing by reason of their complaint.

In substance, we have counter quiet-title actions: a complaint by plaintiffs in possession asking for a declaratory judgment of title; and defendants' answer alleging possession and title and asking declaratory relief that plaintiffs take nothing. Standing alone, these two counterpleadings in quiet title are equitable in nature; and as equitable proceedings they are triable by the court without a jury. (*Thomson* v. *Thomson,* 7 Cal.2d 671, 681 [62 P.2d 358, 117 A.L.R. 1].)

However, defendants, in addition to their quiet title allegations, placed in issue the question of right to possession of the overlapping claims. This they did by the following allegation in their answer:

"Admit that there exists an actual controversy between the plaintiffs on the one hand and the defendants on the other hand; allege that the controversy involves the ownership and *the right of possession* under the mining laws of the United States of America and of the State of California of the lode mining claims asserted by the plaintiffs." (Emphasis added.)

In *Thomson* v. *Thomson, supra,* page 681, the Supreme Court held that: "If plaintiff is in possession, and the defendant by answer or cross-complaint seeks to eject the plaintiff and recover possession, the action involves both equitable and legal issues. The issues arising out of plaintiff's cause of action are equitable, and those resulting from defendant's answer and cross-complaint are legal. In such an action the plaintiff is entitled to have the equitable issues tried by the court without a jury, and the defendant is entitled to have the legal issues submitted to a jury."

The question of possession of the mining claims presented by the pleadings before us is not exactly analogous to the hypothetical situation discussed in the foregoing excerpt from *Thomson.* The issues are comparable, however, in that defendants' answer sets up their claim to possession, while admitting plaintiffs' prior filing. Defendants, in effect, ask the court to declare that they are in possession, thus controverting plaintiffs' allegations of present possession and defendants' trespass. It appears to us that the case comes within the rationale of *Thomson* and that the complaint and answer, when construed together, present two separate issues; namely, the equitable issue of title and the legal issue of possession.

It was held in *Thomson* v. *Thomson, supra,* page 682, and in *Connell* v. *Bowes,* 19 Cal.2d 870 [123 P.2d 456], that where the pleadings frame two separate issues, one equitable (here title to the property) and the other legal (here right to possession), either litigant has the right to have the legal issues tried by a jury. However, when faced with a similar question, the court in *Richard* v. *Degen & Brody, Inc.,* 181 Cal.App.2d 289 [5 Cal.Rptr. 263], held at page 295, that:

" 'When an action involves both legal and equitable issues, the equitable issues, ordinarily, are tried first, for this may obviate the necessity for a subsequent trial of the legal issues.'

(29 Cal.Jur.2d, § 9, p. 496.) To the same effect, see *Swasey* v. *Adair*, 88 Cal. 179, 180 [25 P. 119]; *Connell* v. *Bowes*, 19 Cal.2d 870, 872 [123 P.2d 456]; *Alton* v. *Rogers*, 127 Cal. App.2d 667, 676 [274 P.2d 487]; *Dills* v. *Delira Corp.*, 145 Cal.App.2d 124, 129 [302 P.2d 397]."

In the action before us the court first tried the equitable issue, that is, title to the property. This followed the procedure approved by *Richard* v. *Degen & Brody, Inc., supra,* and *Dills* v. *Delira Corp., supra.* Once the court decreed that defendants' placer mining claims prevailed over plaintiffs' lode mining claims, plaintiffs' demand for a jury trial of the legal issues became moot. This is so since the right to possession necessarily is dependent upon the paramount title, which was found to be in defendants.

Plaintiffs' contention that reversible error was committed in denying them the right to jury trial as to the additional issue of waiver raised by defendants' supplemental answer, is of no moment: The court decided this issue in favor of plaintiffs.

Looking now to the merits of the case, the court found that plaintiffs made no discovery of a mineral lode or vein containing the presence of valuable minerals; which finding plaintiffs allege was erroneous. The area of a lode mining claim is fixed by United States Code Annotated, title 30, section 23, at not to exceed 1,500 feet in length along the vein or lode, and not more than 300 feet on each side of the middle of the vein at the surface. However, in fixing said limits, the section specifically provides: "but no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located." The basic issue in this case is whether plaintiffs discovered a lode or vein as to each of their claims. The case of *Titanium Actynite Industries* v. *McLennan*, 272 F.2d 667, involved a conflict between lode claimants and placer claimants on the same land. ■ In determining the elements or requirements of a lode or vein for claim purposes, the court used the following definitive language, at pages 670-671:

"There can be no unyielding rule of thumb definition of a vein or lode; each case must be decided with reference to its own peculiar facts. Lindley on Mines, Vol. 1, 3d Ed., § 289. It is often said that the mineral-bearing rock, to constitute a lode, must be fixed in the enclosing mass of the surrounding country (citations), it must have fairly well-defined bound-

aries separating it from the country rock. *Iron Silver Mining Co.* v. *Cheesman, supra* [116 U.S. 529 (6 S.Ct. 483, 29 L.Ed. 774)]; *McMullin* v. *Magnuson,* 102 Colo. 230 [78 P.2d 964]; *San Francisco Chemical Co.* v. *Duffield* (8 Cir.) 201 F. 830, certiorari denied 229 U.S. 609 [33 S.Ct. 464, 57 L.Ed. 1350]. In *McMullin* v. *Magnuson, supra,* this language was quoted with approval:

" 'Thus the two essential elements of a lode are (a) the mineral-bearing rock, which must be in place and have reasonable trend and continuity, and (b) the reasonably distinct boundaries on each side of the same.' [102 Colo. 230 (78 P.2d 968).]" (See also *Garibaldi* v. *Grillo,* 17 Cal.App. 540, 543 [120 P. 425]; 33 Cal.Jur.2d § 55, p. 100.)

The term "valuable mineral" in relation to the discovery of a vein or lode has been held to be minerals of such character as would warrant a reasonably prudent person in expending his time and money to further develop the claim. (*Kramer* v. *Sanguinetti,* 33 Cal.App.2d 303, 308 [91 P.2d 604].)

The court found that as to their Claims Owl No. 1, No. 2, No. 4 and No. 5, plaintiffs did not "find or discover . . . a vein or lode, or conditions indicating a vein or lode to exist, containing or carrying a valuable mineral of such form, character, extent or indications sufficient to justify or impel a man of ordinary prudence, not necessarily a miner, to expend further time, effort or money in the development of the property with a reasonable prospect of success in developing a valuable or paying mine; . . ." Although the evidence is conflicting, there is evidence of a substantial nature indicating that plaintiffs discovered no valuable mineral in place. The only convincing evidence that there is a vein or lode type deposit on Owl No. 1, No. 2, No. 4 and No. 5 stems from discoveries made by expert witnesses who examined the property for plaintiffs during the course of the trial. The presence of the particular mineral discovered by the expert witnesses appears to have been unknown to plaintiffs at the time they filed their claims. It is also questionable whether dolomite, the one known valuable mineral present in the area, would qualify for a lode or vein claim since it is found in diffusion. The general formation is one of conglomerate rocks without a vein or lode of the nature plaintiffs contend they discovered and upon which they founded their mining lode claims.

It is a question of fact whether the mineral deposit in the area covered by the claims lies in a lode or vein forma-

tion, or whether it is a conglomerate diffused mass which could qualify only under the provisions of the statutes covering placer mines. (*Titanium Actynite Industries* v. *McLellan, supra; Pepperdine* v. *Keys,* 198 Cal.App.2d 25, 35-36 [17 Cal.Rptr. 709].)　　　Since the evidence on this issue is conflicting, we are bound by the classical rules governing appellate review, clearly summarized in *Berniker* v. *Berniker,* 30 Cal.2d 439 [182 P.2d 557], at page 444, as follows:

"As has so frequently been said, it is the general rule that on appeal an appellate court (1) will view the evidence in the light most favorable to the respondent; (2) will not weigh the evidence; (3) will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact; and (4) will not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof." (See also *Fifield* v. *Greeley,* 132 Cal.App.2d 512, 515 [282 P.2d 552].)

In view of testimony produced by defendants that plaintiffs discovered no vein or lode within the meaning of the statutes, and that the mineral deposits in the area come within the requirements of placer mining claims, we cannot substitute our judgment as to the weight of conflicting evidence for that of the trial court.

Additionally, the trial court held that plaintiffs did not act in good faith in filing their lode claims. It found that the Owl No. 1 discovery monument bore no relation to the alleged discovery since it was 42 feet away from any dolomite and 95 feet from the nearest rock in place. The court also found that the alleged location notice of Owl No. 1 was placed at an angle indicating a northwest strike, while the mineral in the area actually lies in a north and south trend. The discovery monument of Owl No. 4 was 385 feet from the alleged strike and located at right angles to it. The discovery monument of Owl No. 5 was placed at right angles to the alleged discovery and 75 feet west of the alleged vein or mineral deposit. The court also found that in each instance the terrain was such that the location or discovery monument could have been placed in the center of the vein, lode or deposit alleged to have been discovered. Section 2301, California Public Resources Code, requires "posting a notice of such location, at the point of discovery."

　　　A locator is required to find rock in place in a defined vein or lode containing sufficient valuable minerals to justify a person of ordinary prudence in continuing ex-

ploitation and development work. (*Kramer* v. *Sanguinetti, supra,* 33 Cal.App.2d 303, 308, and cases cited therein.) In its memorandum opinion the court said: "The Court is compelled to the conclusion that no actual discovery of valuable mineral was made, nor were conditions exposed which would justify an ordinarily intelligent person in further development of the claim." ■■■ Plaintiffs suggest that use of the word "intelligent" constitutes reversible error since the correct standard is that of a reasonably prudent man. We are spared a dissertation on the semantical distinction, if any, between the two terms since the court in its findings used the language "a man of ordinary prudence." The memorandum opinion cannot be used to impeach the decision embraced in the findings and conclusions. (*Redsted* v. *Weiss,* 73 Cal. App.2d 889, 891 [167 P.2d 735]; *Wincar Welders* v. *Leebrick,* 186 Cal.App.2d 195, 199 [8 Cal.Rptr. 846].)

We deem the findings heretofore discussed sufficient to support the judgment in this case. However, the court found, additionally, that plaintiffs failed to mark or monument the boundaries of their claims as required by Public Resources Code sections 2301 and 2302, and 30 United States Code Annotated, section 23; and that plaintiffs failed to perform the necessary assessment work on their claims. It would serve no useful purpose to relate this additional evidence, scattered throughout the 2,694 pages of transcript.

We have concluded that there is substantial evidence to support the court's findings (a) that plaintiffs failed to locate valuable minerals in place in compliance with lode claim filing requirements, (b) that plaintiffs' claims were made in bad faith, together with (c) the finding that the location notices and boundary monuments were improperly placed. The findings dispose of the additional contention that defendants acted in bad faith and interfered with plaintiffs' prediscovery possessory rights. The court went even further and specifically found that with the exception of Sentinel and Owl No. 3, the area was open public domain at the time defendants entered and made their placer claims. In support of the finding there is evidence (a) that plaintiffs were not in physical possession of the property within the area claimed by the placer filings at the time defendants entered and staked their claims; (b) that defendants entered the property openly and notoriously; and (c) that there was no force used by defendants. (33 Cal.Jur.2d § 58, p. 104; *Horswell* v. *Ruiz,* 67 Cal. 111, 112 [7 P. 197].)

 Plaintiffs' next contention is that the court erred in sustaining defendants' objection to certain hearsay testimony. It appears that a Mr. Bailey, now deceased, was a practical miner and that he advised plaintiffs in their early work on the lode claims. Conversations between Bailey and one of the plaintiffs were offered, on the theory that Bailey's statements were admissible to prove that plaintiffs discovered valuable minerals. Although the offer of proof is vague, we gather that plaintiffs intended to relate statements by Bailey that certain rock or ore specimens he exhibited to them contained valuable minerals. Plaintiffs argue that these statements were made in a period of excitement, and therefore they are within the res gestae exception to the hearsay rule. However, neither the questions asked nor the offer of proof gave any indication of the circumstances under which the statements were made. Nor is there any offer of proof in the record giving an indication of where the minerals were discovered, the nature of the minerals, the nature of the formation in which they were discovered, or any other fact relevant to the issues before the court. Exclusion of the hearsay statements was not error in view of the lack of foundation or offer of proof to qualify them for admission in evidence.

 Plaintiffs contend the hearsay testimony was also admissible to prove that plaintiffs acted within the reasonably prudent man standard in believing they had discovered valuable minerals. The testimony would bear on plaintiffs' intent. Again, no proper foundation was laid, in that it was not shown from which claim the ore was recovered. So far as the record before us is concerned, it could have come from Sentinel or Owl No. 3 which the court found to be owned by plaintiffs. Furthermore, the offer of proof does not indicate that the ore was recovered from a lode or vein, as required under the lode claim statutes. In the circumstances reflected by the record, the exclusion of the hearsay testimony was not reversible error.

 Finally, plaintiffs contend that the findings of the trial court exceed the scope of the issues in three respects. The first relates to the character of the road in section 18. It appears there is but a single roadway leading to all of the claims involved in this lawsuit. Defendants filed a cross-complaint alleging ownership of the segment of the roadway lying in section 7. Plaintiffs answered the cross-complaint by denying defendants' title to the road and affirmatively alleging (a) that the roadway is the sole means of ingress and egress to and from the mining claims of plaintiffs; (b) that

the road leads to the Sentinel mining claim admittedly owned by plaintiffs; and (c) that plaintiffs and their predecessors used the road adversely, openly and under claim of right for more than five years.

Plaintiffs' title to the Sentinel claim is admitted, a fact which is important because the Sentinel is located in section 18, which adjoins section 7. Plaintiffs having affirmatively alleged that the roadway to which defendants claim title in section 7 is the only roadway leading to their claims in section 18 and that it had been used for ingress and egress to the Sentinel for more than five years, thereby placed in issue plaintiffs' right to use the entire road. The court found that the road is a public roadway across both sections 7 and 18. Plaintiffs, who are now complaining about the finding, themselves introduced the evidence upon which the finding is based. The court's finding merely follows the issues raised by plaintiffs' answer to the cross-complaint and the evidence introduced by plaintiffs in support thereof. It is well settled that when a court of equity assumes jurisdiction of an equitable controversy, it will seek to administer complete relief and make a final disposition of the litigation. (*Zimmer* v. *Gorelnik,* 42 Cal.App.2d 440, 447 [109 P.2d 34].)

The second respect in which plaintiffs contend the findings and judgment exceed the issues is that the court, by realigning the boundaries of Owl No. 3 excluded therefrom an area which was not in conflict with defendants' placer claims. An examination of the record indicates that part of the area included within the original boundaries of plaintiffs' Owl No. 3 claim did conflict with defendants' placer claims. It was also established that plaintiffs, in marking the claim, monumented a north line 1,755 feet in length, a south line 1,770 feet in length; and that the south line was 315 feet from the point of discovery on the vein or lode. The vein or the strike of the lode on Owl No. 3 was approximately north 10° east across the claim, or approximately at right angles to the side lines. The court might have found the claim void under the circumstances. However, it simply found the area outside the boundaries of 1,500 feet in length and 300 feet on each side of the middle of the vein, to be excess. In short, the court limited plaintiffs' Owl No. 3 claim to the limits fixed by United States Code Annotated, title 30, section 23, and California Public Resources Code section 2302. Since plaintiffs' title to Owl No. 3 was in issue, the finding as to the boundaries of Owl No. 3 was not error.

■■■ The third respect in which plaintiffs contend the court exceeded the scope of the issues is well taken. The following stipulation was filed at the beginning of the trial:

"That the issues involved in the above action do not now include the conflicts, if any, as follows: between White Cap I, Lode Mining Claim and White Rose #1 Placer Mining Claim; between Three Strike 3 lode mining claim and the Furnace 13 placer mining claim; between Owl #6 lode mining claim and Furnace #9 placer mining claim.

"That the complaint on file herein is hereby amended to so show."

In its findings and judgment the court found there was a conflict between the claims enumerated in the stipulation, and entered a judgment settling such conflict. The stipulation was never withdrawn nor abandoned, so that the judgment contrary to the stipulation is outside the scope of the issues and cannot be allowed to stand.

The judgment is modified to delete therefrom reference to conflicts between White Cap I lode mining claim and White Rose No. 1 placer mining claim; Three Strike 3 lode mining claim and Furnace 13 placer mining claim; Owl No. 6 lode mining claim and Furnace No. 9 placer mining claim.

As modified, the judgment is affirmed. Each party to bear own costs on appeal.

Shepard, Acting P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied September 5, 1962, and appellants' petition for a hearing by the Supreme Court was denied October 8, 1962.